UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Columbia Division

| | | |
|---|---|---|
| Richard M. Kennedy, III, | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **COMPLAINT** |
| | ) | |
| Robert A. McDonald, in his official capacity as Secretary of the U.S. Department of Veterans Affairs, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

PLAINTIFF Richard M. Kennedy, III, brings this action against DEFENDANT Robert A. McDonald, in his official capacity as Secretary of the U.S. Department of Veterans Affairs, and alleges as follows:

*Parties, Jurisdiction, and Venue*

1. This action arises under the federal-sector provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 633a. This Court has jurisdiction pursuant to Section 633a(c) of the ADEA, which provides that a federal employee may bring a civil action in any federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of the ADEA. In addition, this Court has federal question jurisdiction under 28 U.S.C.A. § 1331 and authority to provide declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. At all times relevant to this action, Plaintiff Richard M. Kennedy, III, ("Kennedy") has been a resident of Columbia, South Carolina, and an employee of the Department of Veterans

Affairs where he is a staff anesthesiologist at the William Jennings Bryan Dorn VA Medical Center ("Dorn Medical Center" or "Medical Center") in Columbia, South Carolina.

3. Defendant Robert A. McDonald ("the Secretary") is Secretary of the U.S. Department of Veterans Affairs ("the Department" or "the VA") and, on information and belief, is the appropriate defendant in this action.

4. Venue is proper in this district as Kennedy has been employed here by the Secretary whose Medical Center is situated in this district.

5. This action follows notice to the EEOC of intent to file a civil action, which notice was given on March 9, 2015. More than thirty (30) days have passed since the notice was given.

## FACTUAL ALLEGATIONS

### *Statutory Enactment of New Pay System for Physicians*

6. Effective January 8, 2006, the Department implemented a new pay system for physicians, as mandated by the Department of Veterans Affairs Health Care Personnel Enhancement Act of 2004 ("the Act"), codified as amended at 38 U.S.C. § 7431 (2006).

7. The purpose of the new pay system is to recruit and to retain qualified physicians by offering a level of pay that is competitive in the market.

8. The Act provides that a physician's pay will consist of three elements: base pay, market pay, and performance pay. Base pay is determined by the total number of years of the physician's service in the Veterans Health Administration (VHA), under a "Base and Longevity Pay Schedule." Market pay consists of pay intended to reflect the recruitment and retention needs for the specialty of a particular physician in a VHA medical facility. Performance pay is based on the physician's achievement of specific goals and performance objectives prescribed by the Secretary.

9. The Act provides that a particular physician's market pay "shall be determined by the Secretary on a case-by-case basis."

10. The Act provides that, in determining the amount of pay for a particular physician, the Secretary shall consult with and consider the recommendations of an appropriate panel of physicians and that the Secretary should, to the extent practicable, ensure that the panel includes practicing clinicians who do not hold management positions at the subject physician's medical facility.

11. Under the Act, the Secretary shall evaluate a physician's market pay "not less often than once every 24 months," at which time the amount of market pay may be adjusted "as the result of an evaluation" that "shall take into account" the following criteria:

(a) the level of experience of the physician in the physician's specialty;

(b) the need for the specialty at the medical facility concerned;

(c) the health care labor market for the specialty in the appropriate geographic area;

(d) board certification, if any, of the physician;

(e) prior experience of the physician as an employee of the VHA; and

(f) such other considerations as the Secretary considers appropriate.

12. The Act provides that, not less than once every two years, the Secretary shall prescribe Department-wide minimum and maximum amounts of annual pay that may be paid under the Act to physicians. The Secretary may prescribe minimum and maximum amounts applicable to particular specialties and tiers in which physicians are employed. The sum of the total amount of a physician's base pay and the physician's market pay may not be less than the minimum amount nor more than the maximum amount of annual pay; except that the maximum amount of annual pay may be exceeded as a result of an increase in the physician's annual rate of base pay.

13. The Act provides that the physician's base pay and market pay shall be considered pay for all purposes, including retirement and other benefits.

### *Implementation of the Act*

14. To implement this new pay system, the Department set up "Compensation Panels" at various locations to conduct reviews of physicians' market pay and recommend pay adjustments.

15. The VA Handbook (Part IX) – which, upon information and belief, sets Department practice and policy – provides that Compensation Panels are to review the market pay rates for individual physicians at least once every 24 months in accordance with the criteria enumerated in the Act (detailed in Paragraph 11(a) – (e) above), and, in addition, two more relevant factors: the accomplishment of the physician in the specialty as well as consideration of unique circumstances, qualifications, or credentials, and the comparison of these circumstances to the equivalent compensation level of non-VA physicians or dentists in the local health care labor market.

16. The VA Handbook provides that the relevant Compensation Panel will recommend a rate or an appropriate range of market pay for the physician considering the enumerated criteria set out in the VA Handbook.

17. The VA Handbook provides that Compensation Panel recommendations are to be taken into consideration by the appropriate approving official who is to determine the amount of annual pay to be paid a physician after consideration of the Panel's recommendation. The decision of the approving official is final.

18. The Medical Center Director is the approving official for annual pay up to $275,000; the Network Director approves pay greater than $275,000 and up to $325,000 per year, and the Under Secretary of Health must approve annual pay exceeding $325,000.

19.     The VA Handbook addresses pay limitations and exceptions. The total amount of a physician's annual pay may exceed the maximum set by the Secretary, as a result of a longevity step increase to base pay.

### *Kennedy's Employment and Market Pay*

20.     Kennedy has been employed at the Dorn Medical Center as an anesthesiologist for more than sixteen (16) years, and his performance evaluations have consistently been positive. Kennedy is a board-certified anesthesiologist with approximately twenty (20) years' experience in anesthesiology. He has served as president of the Columbia Medical Society and the South Carolina Society of Anesthesiologists, and he has a law degree.

21.     In early 2014, before the Compensation Panel met to determine Kennedy's pay as a staff anesthesiologist, Kennedy communicated to the Chief of Anesthesiology at the Dorn Medical Center his request that the "market pay" component of his total annual pay be increased, as his salary had been stagnant for several years despite the hard work he had been putting into his job. Kennedy also provided, upon request, to the Department of Anesthesiology, a current curriculum vitae and copies of awards he had received and articles he had written. Nevertheless, after the Compensation Panel met, Kennedy was informed that there would be no change in the "market pay" component of his salary, which would remain at $167,738.

22.     In May of 2014, while serving as acting Chief of Anesthesiology at the Dorn Medical Center, Kennedy was present during a meeting of the Compensation Panel convened to determine the compensation to be paid to a newly hired staff anesthesiologist. At the panel meeting, a representative of the Medical Center's Human Resources department advised the panel that the new hire's salary should be set at a total of $288,500 and asked the panel to sign off on that figure. During the panel's meeting, there was no presentation or discussion of "market pay."

Upon investigation, Kennedy determined that the new hire's market pay was authorized at $189,533 – more than $20,000 higher than Kennedy's.

23. On June 17, 2014, Kennedy submitted an FOIA request for information pertaining to market pay awards for other Dorn Medical Center anesthesiologists. On September 24, 2014, he received information pursuant to his FOIA request which demonstrated an inverse relation between age and market pay and a pattern of discrimination based on age in the determination of market pay for anesthesiologists employed at the Medical Center.

24. Aside from Kennedy, at least seven (7) anesthesiologists have been employed at various times at the Medical Center since 2006. The only statutory criteria for determining market pay that vary among anesthesiologists employed at the Medical Center are level of experience in the specialty of anesthesiology and years of experience as a VHA physician. The annual pay for all anesthesiologists employed at the Medical Center since at least 2010 was between $275,000 and $325,000. All salaries must be approved at the Network Director level.

25. As revealed in information obtained by Kennedy, he is older than all the other anesthesiologists; at the time of the most recent Compensation Panel review, in February 2014, he was the only anesthesiologist over sixty (60) years of age. He has significantly more combined years of experience in the specialty of anesthesiology and as a VHA physician than any other staff anesthesiologist; Kennedy's 36 combined years of experience compare with the other staff anesthesiologists' respective 34, 28, 28, 23, 20, and 13 years of combined experience. With respect to years of experience as a VHA physician, the other staff anesthesiologists have, respectively, 16, 15, 13, 10, and 7 years' experience less than Kennedy. However, Kennedy's market pay is, and has been since at least 2007, significantly lower than that of each of the other anesthesiologists.

26. Upon information and belief, market pay for staff anesthesiologists at the Dorn Medical Center is not evaluated, reviewed, determined, or adjusted in accordance with statutory procedure or criteria.

27. Since at least 2011, and contrary to statutory prescriptions, the majority of members of Compensation Panels at the Medical Center have been physicians in management positions at that facility.

28. Since at least 2007, the Medical Center has not applied the prescribed statutory procedure for determining and adjusting market pay for anesthesiologists. Compensation Panels have intentionally failed to take into account the prescribed statutory criteria and to undertake substantive reviews or recommendations of market pay for staff anesthesiologists.

29. Upon information and belief, and since 2006 – when employing a new hire and reviewing physician pay biennially – managing officials at the Medical Center have made the initial determination of what an anesthesiologist's annual pay (that is, a total amount consisting of base pay and market pay) should be. The Compensation Panel has merely rubber-stamped the managing officials' initial determination, as communicated to the panel by Human Resource personnel. Market pay has been calculated simply by subtracting the anesthesiologist's base pay from his total annual pay, without any consideration of the statutory criteria and, moreover, without any evaluation at all. Subsequently, the approving officials have authorized the physician's level of total annual pay.

30. The Medical Center's practice and policy in setting market pay causes older staff anesthesiologists consistently to receive lower market pay than younger staff anesthesiologists. For example, in 2014, when Kennedy was 63 years old, he received market pay of $167,738, while the market pay provided in 2014 to his younger colleagues was as follows: age 60 ($179,911);

age 57 ($187,246); age 55 ($187,013); age 52 ($190,513); age 49 ($189,533). In previous years, market pay was also determined in an inverse relation to age. Consequently, the practice and policy of the Medical Center result in substantial statistical disparity in market pay and discrimination against older workers, including Kennedy.

## FOR A FIRST CAUSE OF ACTION
### (Violation of the ADEA, 29 U.S.C.A. § 633a)

31.     Paragraphs 1 through 30 above are incorporated here.

32.     The federal sector provisions of the ADEA mandate that all personnel actions affecting employees of executive agencies (including the Department), who are at least 40 years of age, "shall be made free from any discrimination based on age."

33.     Under the ADEA, an unlawful practice occurs, with respect to discrimination in compensation, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

34.     Kennedy is an employee covered by the ADEA who is qualified for increased market pay.

35.     In applying its practice and policy concerning determination of market pay for anesthesiologists, the Dorn Medical Center failed to calculate Kennedy's market pay pursuant to statutory procedure and criteria and, instead, allocated less market pay to Kennedy than to his younger colleagues whose combined years in the specialty of anesthesiology and years as VHA physicians were substantially fewer than Kennedy's.

36. Consequently, Kennedy suffered adverse employment action as a result of the practice and policy applied by the Medical Center, a facility of the Department, an employer covered by the ADEA.

37. But for Kennedy's age, he would not have suffered the adverse employment action.

38. Kennedy suffered age discrimination on account of disparate treatment of him vis-à-vis other younger staff anesthesiologists whom the Medical Center treated more favorably in determining market pay, on information and belief, on account of knowing and intentional decisions made by management officials, members of the Compensation Panel, and/or approving officials.

39. Kennedy suffered age discrimination on account of the disparate impact of the practices and policies of the Medical Center because, although those practices and policies may be facially neutral in their treatment of staff anesthesiologists, their impact falls more harshly on older staff anesthesiologists, including Kennedy.

40. As a result of the discrimination of the Medical Center in violation of the ADEA, Kennedy has suffered loss of back pay due to him in an amount exceeding $100,000.  Moreover, if his pay is not increased to a proper and non-discriminatory level, he will lose income in the coming years of his employment.  In addition, he has suffered and will continue to suffer loss of retirement benefits and other benefits that are tied to market pay and are due to him.

41. The Department is therefore liable to Kennedy for back pay with interest thereon at the statutory rate, future pay, the value of lost retirement and other benefits, consequential damages, attorney fees under the ADEA or the Equal Access to Justice Act, and costs of this action.

## FOR A SECOND CAUSE OF ACTION
### (Declaratory Judgment)

42. Paragraphs 1 through 41 above are incorporated here.

43. The allegations above demonstrate an actual, justiciable controversy between the parties as to Kennedy's rights concerning determination of market pay as a staff anesthesiologist at the Dorn Medical Center.

44. Kennedy respectfully asks this Court to construe and apply the relevant statute, 38 U.S.C. § 7431, concerning pay for physicians employed at VHA medical facilities and to declare that the practice and policy applied by the Medical Center in determining market pay, as described above, is in violation of governing statutory procedure and criteria.

45. Kennedy also respectfully asks this Court to order the Department to apply the proper statutory procedure and criteria, for the purpose of recalculating Kennedy's market pay from 2007 through the present, and to award Kennedy further relief in the form of back pay with interest thereon, future pay, the value of lost retirement and other benefits, consequential damages, attorney fees under the ADEA or the Equal Access to Justice Act, and costs of this action.

WHEREFORE, Plaintiff prays for judgment against Defendant for the relief sought above, for an award of attorney fees and costs of this action, and for such other, necessary and further relief as may be just and proper.

[Signature on following page]

Respectfully submitted,

s/Wilmot B. Irvin
Wilmot B. Irvin, Esq. (USDC #2041)
Rebecca Guental Fulmer, Esq. (Of Counsel)
    (USDC #5160)
LAW OFFICES OF WILMOT B. IRVIN
Post Office Box 7816 (29202)
1612 Marion St., Suite 221
Columbia, South Carolina 29201
(803) 765-0555
(803) 765-0300 (Fax)
wilmot@wilmotirvinlaw.com
rebecca@wilmotirvinlaw.com

ATTORNEYS FOR PLAINTIFF

Columbia, South Carolina

April 30, 2015