

Calendar No. 713

| 108TH CONGRESS<br>2d Session | SENATE | REPORT<br>108–357 |
|---|---|---|

## DEPARTMENT OF VETERANS AFFAIRS HEALTH CARE PERSONNEL ENHANCEMENT ACT OF 2004

SEPTEMBER 23, 2004.—Ordered to be printed

Mr. SPECTER, from the Committee on Veterans' Affairs, submitted the following

## R E P O R T

[To accompany S. 2484]

The Committee on Veterans' Affairs (hereinafter, "the Committee"), to which was referred the bill (S. 2484), to amend title 38, United States Code, to simplify and improve pay provisions for physicians and dentists, to authorize alternate work schedules and executive pay for nurses, having considered the same, reports favorably thereon, and recommends that the bill, as amended, do pass.

### INTRODUCTION

On June 1, 2004, Committee Chairman Arlen Specter introduced, at the request of the Administration, S. 2484, the proposed "Department of Veterans Affairs Health Care Personnel Enhancement Act of 2003." S. 2484, as introduced, would have simplified and improved pay provisions for physicians and dentists employed by the Department of Veterans Affairs (hereinafter "VA") and authorized alternate work schedules and executive pay for VA nurses.

### COMMITTEE HEARINGS

On June 22, 2004, the Committee held a hearing to receive testimony on, among other bills, S. 2484. Testimony was heard from Senators Kent Conrad, Jon S. Corzine, and Hillary Rodham Clinton; The Honorable Tim McClain, VA's General Counsel; Michael J. Kussman, M.D., Acting Deputy Under Secretary for Health, Veterans Health Administration; Mr. Donald L. Mooney, Assistant Director for Resource Development, Veterans Affairs and Rehabilitation Commission, The American Legion; Mr. Paul A. Hayden, Deputy Director, National Legislative Service, Veterans of Foreign Wars; Mr. Adrian M. Atizado, Assistant National Legislative Director, Disabled American Veterans; Mr. Carl Blake, Associate Legis-

29–010

2

lative Director, Paralyzed Veterans of America; and Mr. Richard Jones, National Legislative Director, AMVETS.

## COMMITTEE MEETING

After carefully reviewing the testimony from the foregoing hearing, the Committee met in open session on July 20, 2004, and voted by unanimous voice vote to report favorably S. 2484, as amended.

## SUMMARY OF THE COMMITTEE BILL AS REPORTED

S. 2484, as reported (hereinafter, "Committee bill"), consists of eight sections, summarized below, that would:

1. State that this act may be cited as the "Department of Veterans Affairs Health Care Personnel Enhancement Act of 2004" (section 1);

2. State that any changes made as a result of amendments in this bill should be considered amendments to title 38, U.S. Code unless otherwise noted (section 2);

3. Simplify and improve the pay for physicians and dentists by: creating a 15-step pay schedule; authorizing VA to set national pay bands for clinical specialties and subspecialties; requiring VA to consult at least two national pay surveys before setting the national pay bands; forbidding "negative pay adjustments"; and providing minimal increases in salaries annually for each physician and dentist who performs satisfactorily (section 3);

4. Authorize alternate work schedules for registered nurses, including a three day 12-hour shift that could be paid as though 40 hours of work had been completed, and a nine-months-on, three-months-off schedule that would be paid over a twelve month period (section 4);

5. Authorize a special rate of pay for the Director of Nursing Service in VA's Central Office (section 5);

6. Authorize special pay for VA hospital-based nurse executives (section 6);

7. Clarify the discretionary nature of the Secretary's authority under Chapter 74 of title 38 (section 7); and

8. Establish the effective date of this Act as one year following the date of enactment (section 8).

## BACKGROUND AND DISCUSSION

*Section 1. Short Title*

Section 1 of the Committee bill states that this act shall be known as the "Department of Veterans Affairs Health Care Personnel Enhancement Act of 2004."

*Sec. 2. References to Title 38, United States Code*

Section 2 of the Committee bill requires that, unless otherwise noted, all amendments in this act shall be considered amendments to title 38, United States Code.

3

### Sec. 3. Simplification and Improvement of Grade and Pay Provisions for Physicians and Dentists

#### Background

The current VA compensation structure for physicians and dentists consists of two major elements: base pay and special pay. VA has operated under a similar "two-tier" system for compensating physicians and dentists since passage of the "Organic Act of 1946", Public Law 79–293, which set "base salary" for physicians at $3,640 and "special pay" at 25 percent of base pay.

Base pay is similar, but not identical, to the General Schedule salary system used to compensate most Federal employees. A physician's or dentist's base pay is initially determined on the basis of the pay grade at which he or she is hired by VA, with the most common level being "Service Chief Grade" (a GS–15 equivalent). Base pay then increases over time with annual Federal comparability adjustments, with periodic "step promotions" (salary increases, based primarily on seniority, within a pay grade), and with "grade promotions" (moving from one grade level to another). There is an overall cap on base pay at the rate of Executive Level V ($128,200 in Fiscal Year 2004).

Special pay consists of numerous statutorily-set monetary awards that are designed to provide additional compensation to physicians and dentists for both common and uncommon skills and accomplishments. Examples of special pay "add-ons" include $9,000 per year for full-time employment, and $2,000 per year for a physician's or dentist's first board certification and $500 per year for each additional certification. Other special pay "add-ons" include up to $40,000 per year for a physician who has a medical specialty that is extraordinarily difficult for VA to recruit or retain, and up to $17,000 per year for a physician who works in a geographic location at which VA has difficulty recruiting and retaining qualified medical staff.

A physician's or dentist's actual pay is determined by adding to his or her base pay all of the special pay rates for which he or she is eligible. *old way*

Since passage of the Organic Act of 1946, the following pattern has recurred: VA has difficulty recruiting and retaining physicians and dentists due to inadequate pay; Congress is notified after recruitment or retention becomes a crisis; Congress acts to "stabilize" recruitment and retention by raising base pay and adding to the "special pay" rates; and the situation stabilizes—but only to be repeated later. Currently, VA is at the second step of this "cycle." That is, VA now faces severe recruitment and retention difficulties, and it has notified Congress of these difficulties.

VA's base pay and special pay scales were last adjusted in the Department of Veterans Affairs Health Care Personnel Act of 1991, Public Law 102–40. Since that time, a large percentage of VA's physicians and dentists have reached the point at which they are paid the maximum base pay level. And because the special pay rates are capped by statute, those doctors and dentists have received only inflation adjustments to their salaries over the past few years. While VA physician salaries may be as high as $220,000 per year (assuming the physician receives the maximum base pay and many of the available special pay awards), that pay ceiling, coupled

4

with a high medical inflation rate that has driven up salaries in the private sector, has widened the gap between VA salaries and compensation earned in the private and academic sectors. This gap has hampered VA efforts to hire physicians in specialties such as radiology, cardiology, and oncology where VA lags behind the competition in pay by, in some cases, 35 percent or more.

The comparative gaps in pay have caused an increase in the use by VA of "scarce medical contracts." By such contracts, VA medical centers are able to purchase needed medical services from community providers that are unavailable "in-house" for lack of staff. For example, the Pittsburgh VA Medical Center contracts for the services of two "outside" cardiologists at a cost of $1 million per year. The Medical Center reports that it could hire two cardiologists at salary levels of approximately $300,000 per year, but it lacks authority to pay such salaries.

*The Administration's Proposal*

The Administration submitted proposed legislation in July 2003 to address inadequacies in the compensation of physicians and dentists. In contrast to past proposals, however, the Administration did not suggest that base pay and special pay rates simply be raised. Instead, it proposed a new three-tiered system consisting of base pay, market pay, and performance-based pay. The sum total of the three tiers of pay would have been benchmarked against the 50th percentile of the Associate Professor compensation rate as published by the American Association of Medical Colleges (hereinafter, "AAMC") for each physician specialty. For dentists, the benchmark would have been the 75th percentile of the American Dental Association (hereinafter, "ADA") net private practice income. Thus, VA salary rates would have, for the first time, been able to rise without intervening Congressional action as the physician (AAMC) and dentist (ADA) pay indices rose.

As for the mechanics of how each of the three tiers of pay would be set, the Administration proposed that base pay for each physician and dentist be set between the rate now paid to physicians and dentists compensated at the VA Chief Grade, step 10, level and Level V of the Executive Schedule (approximately $110,000–$128,200 per year). To that base pay, VA would have added a second tier of compensation, market pay, that would have varied with several factors such as geographic area, specialty, and assignment being taken into account. Finally, the Administration proposed a third tier of compensation, performance-based pay that would have been awarded atop a physician's or dentist's base pay plus market pay to recognize individual achievements in quality, productivity, and advancing overall agency goals. An individual physician's (or dentist's) actual salary would have been set at the local medical center level and would have been indexed to AAMC's (or ADA's) rates for commensurate employment levels (entry-level, mid-career, or executive).

*Administration's proposal* [handwritten margin note]

According to VA, this new system "would [have] ensure[d] that VA pay levels d[id] not fall drastically behind while awaiting adjustments to the statutory authority . . . . It [would have] be[en] a living system that adjusts to changing forces in the healthcare labor market."

5

*The Committee Bill*

After receiving the Administration's proposed legislation, Chairman Specter instructed Committee staff to work with interested parties—including the National Association of VA Physicians and Dentists and the American Federation of Government Employees—to develop a consensus, if possible, on proposed changes in physician and dentist pay. Those discussions led to amendments to S. 2484, which were offered by the Chairman at the Committee's meeting on July 20, 2004. S. 2484, as so amended, was approved by the Committee at that meeting. The Committee bill builds on the Administration's basic concept of a pay system that adjusts to market conditions without the need for intervening legislation. At the same time, it responds to concerns expressed by organizations that represent physicians and dentists—the VA personnel who would have been directly affected by these proposed changes in law.

First, the Committee bill would continue, as today, to provide a predictable base salary for all VA physicians and dentists. Base salary would range from $90,000 per year to $133,000 per year, "stepped" to reflect the number of years a physician or dentist has worked in the VA health care system. A physician or dentist would move up one step for every two year period he or she has worked for VA. Further, base salaries would increase each year by the same percentage as annual cost-of-living adjustments made under Section 5303 of Title 5.

Second, instead of fixed "special pay" rates set now by statute, and similar to the Administration's proposal, the Committee bill would authorize VA-established special pay "add-ons" based on national pay survey data for physicians and dentists. The Committee bill would require that pay survey data be drawn from at least two separate sources (not wholly from AAMC and ADA surveys as proposed by the Administration). Special pay "add-ons" would vary, as deemed necessary by VA, from specialty to specialty. For example, the Secretary could set separate national "pay bands" for primary care physicians, cardiologists, surgeons, and neurologists. Each physician hired would be placed in an appropriate pay band, and the amount of special pay to be added to his or her base pay would be set within the range established by the band. Individual physician or dentist salary levels within the physician's (or dentist's) appropriate pay band would be set based on recommendations from a Professional Standards Board established at the physician's or dentist's local VA medical facility. Such boards would also review the salary of each physician and dentist on staff and recommend adjustments as appropriate, not less frequently than once every two years. 

Finally, the Committee bill would allow for a third pay tier "add-on" of up to $10,000 in incentive and bonus pay. Such pay would be awarded to physicians or dentists in recognition of outstanding contributions in the furnishing of care to veterans locally and/or for contributions to the overall practice of medicine or dentistry.

The changes made by the Committee bill to the Administration's proposed legislation are intended to accomplish two goals. First, and most importantly, they are intended to provide VA with a system that is appropriately flexible, as the Administration requested, for the recruitment and retention of doctors and dentists to care for

6

veterans. But the Committee bill also seeks to retain some of the attractive elements of the civil service-like system that currently exists. While it may be the case that the nature of government service is such that VA salaries will never—and, perhaps, should never—reach the highest levels paid in the private sector, the Committee bill does ensure that VA physicians and dentists are provided uniform, guaranteed base salaries at highly attractive levels. It also ensures that physicians performing satisfactorily would be assured of some minimal periodic raises, much like today. Further, physicians and dentists would be assured that their salaries will not be reduced during their service with VA. This provision was extremely important to employee representatives because of the large amount of discretion over salaries placed in the hands of local and national officials.

Finally, the Committee bill requires that practicing physicians have a significant role in making recommendations to the Secretary or his or her designee as to the appropriate levels of salaries paid to members of their professions. Physicians and dentists are at the "front-lines" of medicine; they know what is needed to provide care for veterans. This provision advances the tradition of co-operation among labor and management in the Federal sector, particularly within the healthcare environment.

*Sec. 4. Alternative Work Schedules for Registered Nurses*

*Background*

Under current law, VA nurse compensation is based wholly on a 40 hour work week. Consequently, VA is unable to offer employees the menu of special schedules and pay rates that are widely available to nurses in the private sector. This inflexibility in work schedules, according to VA, is a major cause of nurse dissatisfaction. In fact, a survey conducted in 2000 by the American Organization of Nurse Executives found that, after salary, the top benefit sought by nurses is "flexible scheduling and control over shifts." Providing different options for scheduling would thus be a potentially useful way to bring more nurses into the VA workplace and to retain the services of VA nurses once they have entered the VA work force.

VA Medical Centers must compete in local employment markets that offer a variety of flexible work schedules and pay practices to professional nurses. Flexible pay and work-schedule options are popular because they allow nurses to adjust their work schedules to accommodate individual lifestyles and personal obligations. The ability to offer options comparable to those offered by private sector competitors would significantly enhance VA's ability to remain a competitive employer.

In August 2003, the Administration requested legislation to enhance its ability to recruit and retain high quality nurses by enabling VA medical centers to offer to nurses, in addition to the current 40-hour work week, the following three flexible work schedule tours (1) three 12-hour shifts (36 hours) in a work week paid as 40 hours; (2) seven ten-hour days of work followed by seven days off in a pay period, with pay for 80 hours; and (3) nine months of work with three months off, with pay apportioned over a 12-month period.

**Kennedy_15**

7

After this proposed legislation was submitted to the Congress, two studies were released that made a compelling case against nurses working extended shifts. First, the Institute of Medicine (hereinafter, "IOM") released a report stating that extended work shifts create potentially hazardous conditions for patients. The report, Keeping Patients Safe: Transforming the Work Environment of Nurses, National Academies Press (2004), recommends that, in order to reduce error-producing fatigue, health care organizations establish policies designed to prevent nurses who provide direct patient care from working longer than 12 hours in a 24-hour period and in excess of 60 hours per seven-day period. In addition, researchers at the University of Pennsylvania have concluded that the risks of error are significantly increased when work shifts are longer than twelve hours or when nurses work more than forty hours per week. Rogers, A. E. et al., "The Working Hours of Hospital Staff Nurses and Patient Safety" Health Affairs 23, no. 4 (2004) at 202.

*Committee Bill*

Section 4 of the Committee bill authorizes two alternative work schedules for nurses. In light of the above-cited findings, however, the option of working seven ten-hour days with seven days off in a pay period is not included in the Committee bill. Such a measure would have directly conflicted with the safety recommendations outlined in both the IOM report and the University of Pennsylvania study.

The first work schedule option, the "36/40 work schedule," would consist of three 12-hour shifts (36 hours) in a work week paid as 40 hours. If VA were to use this authority, it would be required to develop policies to prevent nurses from working shifts in excess of 12 hours, as recommended by the IOM report. Section 4 of the Committee bill would also authorize a "Nine Month Work Schedule" consisting of nine months of work with three months off, with pay apportioned over a 12-month period. Nurses working this schedule would be considered 0.75 full-time equivalent employees except for the purpose of health care benefit premiums as outlined in chapter 89 of Title 5.

Section 4 of the Committee bill would also allow a nurse who has already attained full-time, non-probationary status to choose one of the two alternative schedule options and retain his or her full-time/non-probationary status. Current law would deem either alternative schedule to be part-time work—work that gives rise to probationary status for an indefinite period. In addition, new employees or current part-time employees who work one of the new alternative schedules would be allowed to attain non-probationary status after 4,160 hours of satisfactory work (the equivalent of two years) under the new schedule.

Section 4 of the Committee bill would also require VA to submit to Congress a report on the overtime hours, if any, worked by nurses who choose to work these alternative schedules. The Committee is concerned that nurses may be disproportionately assigned overtime work; it will conduct rigorous oversight to ensure such is not the case.

8

*Sec. 5. Rate of Pay for Director of Nursing Service*

*Background*

The position of Director, Nursing Programs, is paid under VA's Nurse Locality Pay System. The maximum salary under that system is Executive Level V ($128,200 in Fiscal Year 2004), a rate of pay that is lower than the salary paid to comparable positions in the Senior Executive Service or to VA executives appointed under 38 U.S.C. 7306. The maximum payable rate under the Senior Executive Service Executive Level II, will be $158,200.

Due to the current pay limitation, the pay for the Director, Nursing Programs, is not competitive with rates paid to comparable positions in the private sector or within the Federal government. The limitation has caused serious recruitment difficulties, resulting in the position being vacant for months despite aggressive recruitment efforts. Nurse executives in other Federal agencies are compensated under the Senior Executive Service pay system.

*Committee Bill*

Section 5 of the Committee bill would authorize VA to establish a special rate of pay for the Director of Nursing Service equal to the sum of the maximum rate of basic pay established for the Senior Executive Service and the amount of locality-based comparability payment.

*Sec. 6. Nurse Executive Special Pay*

*Background*

The realities of 21st century nursing—fewer nurses, intensive care demands, complex care environments and growing administrative requirements—require a pool of highly-skilled nurse executives at the facility and national levels who have the knowledge and experience to develop responsive and innovative care-delivery models. The nurse's role in executive practice has greatly evolved from a focus on nursing services to a broader accountability for patient care services across the healthcare continuum. Recruitment and voluntary loss trends underscore a growing concern for VA's ability to compete.

Currently, VA nurse executive pay is not comparable to the pay and perquisites offered to nurse executives in the private sector. As a result, VA is not positioned to hire or retain nurse executives with exceptional skills. The current pay structure offers little or no incentive for nurse leaders to assume challenging and demanding assignments. Another major problem is the fact that the annual salaries of nurse executives are capped at Level V of the Executive Schedule, currently $128,200. There is no such cap in non-VA healthcare facilities.

The VHA Future Nursing Workforce Planning Group, a body of medical center administrators, nurse executives, Network managers and clinicians, has contended that additional compensation in the $10,000–$25,000 range would place VA nurse executives at parity with non-VA nurse executives. Additional compensation in this range would also be consistent with the range of special pay currently available to VA physician executives.

*Nurses* [handwritten annotation]

**Kennedy_17**

9

*Committee Bill*

Section 6 of the Committee bill would authorize VA to approve special pay to nurse executives in a VA Medical Center or in VA Central Office. The special pay could range from $10,000 to $25,000. The amount of special pay offered to a particular nurse executive would vary based on factors such as the grade of the nurse executive, the scope and complexity of the nurse executive's position, his or her personal qualifications, the characteristics of the healthcare facility employing the nurse executive, and other such factors as VA might deem appropriate.

*Sec. 7. Clarification of Discretionary Nature of Veterans Health Administration Personnel Administration Authorities*

Section 7 of the Committee bill responds to a VA request to clarify whether it is Congress' intent that the authorities vested in the Secretary under Chapter 74 of title 38, U.S. Code, pertaining to certain VA personnel, are discretionary to the Secretary. While the Committee did not necessarily see the need to clarify existing law, the section is included in the Committee bill to affirm that the authorities set forth in Chapter 74 are indeed discretionary.

*Sec. 8. Effective Date*

Section 8 of the Committee bill delays the effect of the amendments that would be made by the Committee bill until one year after the date of the enactment. Many of the changes that would be made by the Committee bill will require significant time for proper implementation. The Committee believes that one year will allow VA time to gather and analyze data, e.g., salary surveys, and make data-driven decisions with regard to physician pay and nurse scheduling.

COST ESTIMATE

In compliance with paragraph 11(a) of rule XXVI of the Standing Rules of the Senate, the Committee, based on information supplied by the Congressional Budget Office (hereinafter, "CBO"), estimates that enactment of the Committee bill would not increase direct spending for veterans programs over the 2006–2009 period. CBO estimates that enactment of the Committee bill would, assuming appropriations, increase discretionary spending outlays by $186 million in 2006, and $763 million over the 2006–2009 period.

The Committee bill contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act. Further, enactment of the Committee bill would not affect the budgets of state, local, or tribal governments.

The cost estimate provided by CBO, setting forth a detailed breakdown of costs, follows:

**Kennedy_18**

10

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, August 20, 2004.*

Hon. ARLEN SPECTER,
*Chairman, Committee on Veterans' Affairs,*
*U.S. Senate, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for S. 2484, the Department of Veterans Affairs Health Care Personnel Enhancement Act of 2004.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Sarah T. Jennings.

Sincerely,

DOUGLAS HOLTZ-EAKIN,
*Director.*

*S. 2484—Department of Veterans Affairs Health Care Personnel Enhancement Act of 2004*

Summary: S. 2484 would change the compensation schedule that the Department of Veterans Affairs (VA) uses to pay its doctors and dentists. Those changes would increase salaries for many doctors and dentists. In addition it would allow VA nurses to work alternate work schedules that would be treated as the equivalent of full-time work—even though the total hours worked by the nurses would be less than 40 hours per week. Finally, the bill would allow VA to pay nurse executives a bonus ranging from $10,000 to $25,000.

CBO estimates that implementing S. 2484 would cost $182 million in 2006 and $763 million over the 2006–2009 period, assuming appropriation of the necessary amounts. Enacting the bill would not affect direct spending or receipts.

S. 2484 contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act (UMRA) and would impose no costs on state, local, or tribal governments.

Estimated cost to the Federal Government: The estimated budgetary impact of S. 2484 is shown in the following table. The costs of this legislation fall within budget function 700 (veterans' benefits and services).

| | By fiscal year, in millions of dollars— | | | | | |
|---|---|---|---|---|---|---|
| | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
| SPENDING SUBJECT TO APPROPRIATION | | | | | | |
| Spending under current law for veterans' medical care: | | | | | | |
| Estimated authorization level [1] | 27,957 | 28,888 | 29,706 | 30,608 | 31,117 | 32,104 |
| Estimated outlays | 27,141 | 28,334 | 29,293 | 30,210 | 30,846 | 31,756 |
| Proposed changes: | | | | | | |
| Base pay and market pay: | | | | | | |
| Estimated authorization level | 0 | 0 | 164 | 170 | 176 | 183 |
| Estimated outlays | 0 | 0 | 148 | 168 | 174 | 181 |
| Incentive pay: | | | | | | |
| Estimated authorization level | 0 | 0 | 11 | 11 | 11 | 11 |
| Estimated outlays | 0 | 0 | 10 | 11 | 11 | 11 |
| Contract care savings: | | | | | | |
| Estimated authorization level | 0 | 0 | −10 | −22 | −34 | −35 |
| Estimated outlays | 0 | 0 | −9 | −21 | −33 | −35 |
| Subtotal, pay for doctors and dentists: | | | | | | |
| Estimated authorization level | 0 | 0 | 165 | 159 | 153 | 159 |
| Estimated outlays | 0 | 0 | 149 | 158 | 152 | 157 |

11

| | By fiscal year, in millions of dollars— | | | | | |
|---|---|---|---|---|---|---|
| | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
| Alternative work schedules for nurses: | | | | | | |
| Estimated authorization level | 0 | 0 | 33 | 34 | 35 | 36 |
| Estimated outlays | 0 | 0 | 30 | 34 | 35 | 36 |
| Nurse executive bonus: | | | | | | |
| Estimated authorization level | 0 | 0 | 3 | 3 | 3 | 3 |
| Estimated outlays | 0 | 0 | 3 | 3 | 3 | 3 |
| Total changes: | | | | | | |
| Estimated authorization level | 0 | 0 | 201 | 196 | 191 | 198 |
| Estimated outlays | 0 | 0 | 182 | 195 | 190 | 196 |
| Spending for veterans' medical care under H.R. 4248: | | | | | | |
| Estimated authorization level | 27,957 | 28,888 | 29,907 | 30,804 | 31,308 | 32,302 |
| Estimated outlays | 27,141 | 28,334 | 29,475 | 30,405 | 31,036 | 31,952 |

¹ The 2004 level is the amount appropriated for that year. No full-year appropriation has yet been provided for fiscal year 2005. The current-law amounts for the 2005–2009 period assume appropriations remain at the 2004 level with adjustments for anticipated inflation.

Basis of estimate: This estimate assumes that the bill would be enacted near the start of fiscal year 2005 and that the necessary amounts for implementing the bill will be appropriated for each year. Changes under the bill would not take effect for one year after the bill's enactment date. Thus, we do not estimate any costs for fiscal year 2005.

*Doctor and Dentist Pay Schedule*

Section 3 would change the compensation schedule for doctors and dentists employed by VA. It would mandate a schedule for base pay that would be determined by the length of time each doctor or dentist has worked for VA. This schedule would start at $90,000 a year for someone with two years of service or less and increase to $133,000 for those with more than 28 years of service. In addition to base pay, each doctor and dentist would be eligible for additional compensation called market pay that would be determined by VA in a manner to account for each doctor's or dentist's relevant work experience, VA's needs for each particular medical specialty, the underlying market demand, and other factors that VA would determine to be relevant. Finally, the bill also would allow VA to pay each doctor and dentist incentive pay that would reflect outstanding performance. Incentive pay would be paid on a case-by-case basis and would be limited to not more than $10,000 per year.

Under the bill, this new compensation approach would replace the current compensation practices that VA uses to pay doctors and dentists. By offering higher pay to doctors and dentists, CBO expects VA would likely be able to hire more physicians and dentists and thus save some money that it currently pays for veterans to receive health care outside of VA facilities. Considering all these factors, CBO estimates that implementing this proposal would cost $149 million in 2006 and $616 million over the 2006–2009 period, assuming appropriation of the necessary amounts.

Base Pay and Market Pay. Based on information from VA, CBO estimates that this proposal would increase spending by VA on salaries for doctors and dentists. Under the first two components of the new pay system—base pay and market pay—doctors in fields such as anesthesiology and neurosurgery could see significant increases, though doctors in other specialities would be less likely to receive a pay increase. Using information from VA, CBO estimates that under these two proposals, the average salary for VA's roughly

12

11,000 doctors and dentists would increase by about $14,500 in 2006. Thus, CBO estimates that implementing these two proposals would cost $148 million in 2006 and $671 million over the 2006–2009 period, assuming appropriation of the required amounts.

Incentive Pay. CBO assumes that 20 percent of VA's doctors and dentists would receive, on average, about $5,000 in incentive pay each year for this estimate. Accordingly, CBO estimates that implementing this provision would cost about $10 million in 2006 and $43 million over the 2006–2009 period, assuming appropriation of the estimated amounts.

Contract Care Savings. Under current practice, VA spends about $650 million a year to pay for health care for veterans furnished outside of VA health care facilities. By increasing its compensation for certain doctors, CBO expects that VA would be able to treat more veterans in its own facilities. Based on information from VA, CBO estimates that VA would be able to save about 5 percent of the total amount it spends on contracts for health care outside of VA facilities. Assuming it would take about three years to fully realize these savings, CBO estimates that implementing section 3 would save VA about $9 million in 2006 and $98 million for providing contract care over the 2006–2009 period, assuming appropriations are reduced by the estimated amounts.

*Alternative Work Schedules for Nurses*

Under section 4, VA would have the authority to treat nurses who work three regularly scheduled 12-hour shifts within one workweek as having worked a full 40 hours during that week. Under the bill, nurses would still be paid as if they had worked 40 hours, despite working less than 40 hours while on this alternative schedule. Under current law, VA cannot allow nurses who work these schedules to be treated as if they are working 40 hours a week.

Based on information from VA, CBO expects that VA would allow more than 4,000 nurses to use this alternative work schedule. Because these nurses would be working fewer hours each week, CBO expects that VA would probably hire additional personnel to cover the remaining work load. Based on the estimated decrease in total hours worked, CBO estimates that VA would need to hire about 400 additional nurses at an estimated annual cost of about $78,000 per nurse in 2005. Assuming it takes about six months for VA to begin using this authority and that annual salaries increase with inflation, CBO estimates that implementing section 4 would cost $30 million in 2006 and $135 million over the 2006–2009 period, assuming appropriation of the necessary amounts.

*Nurse Executive Bonus*

Section 6 would allow VA to pay the nurse executive in each of the Department's 165 medical care facilities and its central office an annual bonus ranging from $10,000 to $25,000. According to VA, this provision would affect about 185 people. Assuming that the average bonus is $17,500, CBO estimates that implementing this bonus system would cost $3 million in 2006 and $12 million over the 2006–2009 period, assuming appropriation of the necessary amounts.

13

Intergovernmental and private-sector impact: S. 2484 contains no intergovernmental or private-sector mandates as defined in UMRA and would impose no costs on state, local, or tribal governments.

Previous CBO estimate: On June 9, 2004, CBO transmitted an estimate for H.R. 4231, the Department of Veterans Affairs Nurse Recruitment and Retention Act of 2004, as ordered reported by the House Committee on Veterans' Affairs on May 19, 2004. The differences in the estimated costs reflect differences in the bills. In particular, section 3 of H.R. 4231 is similar to section 4 of S. 2484 in that both would allow VA to treat nurses who work three regularly scheduled 12-hour work shifts within one workweek as having worked a full 40 hours during that week. H.R. 4231 also would allow VA to treat nurses who work seven 10-hour shifts within a two week pay period as having worked 80 hours during that period, but S. 2484 would not allow such schedules. In addition, S. 2484 would allow VA to pay nurse executives an annual bonus ranging from $10,000 to $25,000 while H.R. 4231 would not. Finally, S. 2484 would change the compensation schedule for doctors and dentists while H.R. 4231 would make no changes in their compensation.

Estimate prepared by: Federal Costs: Sam Papenfuss. Impact on State, Local, and Tribal Governments: Melissa Merrell. Impact on the Private Sector: Allison Percy.

Estimate approved by: Peter H. Fontaine, Deputy Assistant Director for Budget Analysis.

## REGULATORY IMPACT STATEMENT

In compliance with paragraph 11(b) of rule XXVI of the Standing Rules of the Senate, the Committee on Veterans' Affairs has made an evaluation of the regulatory impact that would be incurred in carrying out the Committee bill. The Committee finds that the Committee bill would not entail any regulation of individuals or businesses or result in any impact on the personal privacy of any individuals and that the paperwork resulting from enactment would be minimal.

## TABULATION OF VOTES CAST BY COMMITTEE

In compliance with paragraph 7 of rule XXVI of the Standing Rules of the Senate, the following is a tabulation of votes cast in person or by proxy by members of the Committee on Veterans' Affairs at its July 22, 2004, meeting. On that date, the Committee, by unanimous voice vote, ordered S. 2484, a bill to amend title 38, United States Code, to simplify and improve pay provisions for physicians and dentists, and to authorize alternate work schedules and executive pay for nurses, as amended, reported favorably to the Senate.

## AGENCY REPORT

On June 22, 2004, the Honorable Gordon H. Mansfield, Deputy Secretary of Veterans Affairs, appeared before the Committee on Veterans' Affairs and submitted testimony on, among other things, S. 2484. Excerpts from this statement are reprinted below:

**Kennedy_22**

14

STATEMENT OF THE VIEWS OF THE ADMINISTRATION, STATE-
MENT OF GORDON MANSFIELD, DEPUTY SECRETARY OF
VETERANS AFFAIRS

*Physicians/Dentists Special Pay*

Mr. Chairman, we very much appreciate your having in-
troduced, by request, S. 2484. S. 2484 is an important VA
proposal to overhaul physician and dentist pay to greatly
enhance VA's ability to recruit and retain high quality
physicians and dentists, particularly high-cost medical spe-
cialists, to treat the Nation's veterans. It would completely
revise the VA physician and dentist pay system to allow
VA to adjust physician and dentist compensation levels ac-
cording to market forces. The system's simplicity and flexi-
bility would ensure that VA physician and dentist com-
pensation levels and practices do not become outdated over
time due to statutory limits.

The VA compensation structure for physicians and den-
tists has not changed since 1991. The current system is ex-
tremely complex, comprising seven or eight different spe-
cial pay components in addition to basic pay. The system
offers insufficient flexibility to respond to the changing
competitive market for many of the medical specialties, es-
pecially for the highest paid medical subspecialties. VA is
unable to offer competitive positions for critical subspecial-
ties, such as anesthesiology, radiology, cardiology, urology,
gastroenterology, oncology, and orthopedic surgery. Na-
tional shortages of qualified physicians in these specialties
have driven compensation levels dramatically upward. In
these shortage specialties, VA total compensation lags be-
hind the private or academic sectors by 35 percent or
more. Although Congress did increase the amounts of spe-
cial pay for dentists in 2000, those increases did not bring
VA pay up to the levels in private dental practice. The ef-
fects of noncompetitive pay and benefits are reflected in
dramatic increases in VA's reliance on expensive scarce
medical specialist contracts and fee-basis care.

S. 2484 would establish a three-tiered system of base
pay, market pay, and performance-based pay. The first
tier, a uniform base pay band, would apply to all positions
in VHA without grade distinctions. The proposed range is
Chief grade, step 10 of the VA Physician/Dentist Schedule
to Level V of the Executive Schedule, from roughly
$110,000 to $125,000. This change would dramatically sim-
plify hiring and employment and facilitate reassignments
and position changes. Placement in this band would be
based on the individual's qualifications. The second tier,
the market pay band, would be determined according to
geographic area, specialty, assignment, personal qualifica-
tions and individual experience. It would be indexed to the
salaries of similarly qualified non-Department physicians,
dentists, and health-care executives. The flexibility of this
tier would allow VA to keep pace with the market, both on
upward and downward trends. The third tier would be

*tiers*

**Kennedy_23**

15

achievements in quality, productivity, and support of corporate goals. VA facilities would be able to authorize performance pay of up to $10,000 for physicians and dentists below the Chief of Staff (CoS) level. VA would benchmark the sum of all three bands to the 50th percentile of the Association of American Medical Colleges (AAMC) Associate Professor compensation (for physicians) and 75 percent of American Dental Association (ADA) net private practice income (for dentists).

*Flexible Schedules for Registered Nurses*

S. 2484 also includes provisions to help make VA more competitive in its ongoing efforts to recruit and retain registered nurses and other health care personnel. I am especially pleased that the bill would permit enhanced flexibility in scheduling tours of duty for registered nurses. Such flexibility would permit our facilities to offer our registered nurses schedule options comparable to those often available at private and other non-VA hospitals and medical centers. In prior testimony before this Committee, we have noted the projected increase in the number of aging veterans and increased enrollment in the VA health care system by veterans of all ages over the next several years and the projected national shortage of registered nurses. VA's health care providers are its most important resource in delivering high-quality, compassionate care to our Nation's veterans. VA's nurses are critical front-line components of the VA health care team. We must be able to recruit and retain well-qualified nurses. The ability to offer compensation, employment benefits and working conditions comparable to those available in their communities is critical to our ability to recruit and retain nurses, particularly in highly competitive labor markets and for hard-to-fill specialty assignments. Thanks to the efforts of this Committee and the House Veterans' Affairs Committee, VA has been able to offer generally competitive pay for nurses in most markets. Enactment of S. 2484 would permit VA to continue meeting the increasing challenge of recruiting and retaining sufficient nurses and other health care professionals to meet its patient care needs.

CHANGES IN EXISTING LAW MADE BY THE COMMITTEE BILL, AS REPORTED

In compliance with rule XXVI paragraph 12 of the Standing Rules of the Senate, changes in existing law made by the Committee bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

# TITLE 38, UNITED STATES CODE

\*       \*       \*       \*       \*       \*       \*

**Kennedy_24**

16

Chapter 74—Veterans Health Administration—Personnel

Subchapter I * * *

\*           \*           \*           \*           \*           \*           \*

Subchapter II * * *

Sec. 7426. * * *
Sec. 7427. *Discretionary nature of functions.*

Subchapter III—[Special] *Pay for Physicians and Dentists*

Sec. 7431. [Special] *Pay.* [:authority]
Sec. 7432. [Special] *Pay of Under Secretary for Health.* [:written agreements]
Sec. 7433. [Special pay: full time physicians] *Administrative matters.*
[Sec. 7434. Special pay: part-time physicians.]
[Sec. 7435. Special pay: full-time dentists.]
[Sec. 7436. Special pay: part-time dentists.]
[Sec. 7437. Special pay: general provisions.]
[Sec. 7438. Special pay: coordination with other benefits laws.]
[Sec. 7439. Periodic review of pay of physicians and dentists; quadrennial report.]
[Sec. 7440. Annual report.]

Subchapter IV—Pay for Nurses and Other Health-Care Professionals

Sec. 7456. * * *
Sec. 7456A. *Nurses: alternate work schedules.*
Sec. 7457. On call pay
Sec. 7458. Recruitment and retention bonus pay.
Sec. 7459. *Director of Nursing Service: rate of pay.*

\*           \*           \*           \*           \*           \*           \*

## CHAPTER 74—VETERANS HEALTH ADMINISTRATION—PERSONNEL

### Subchapter I—Appointments

**§ 7401 * * ***

\*           \*           \*           \*           \*           \*           \*

### § 7404. Grades and pay scales

(a) * * *

(b) [(1) The grades for positions provided for in paragraph (1) of section 7401 of this title shall be as follows. The annual ranges of rates of basic pay for those grades shall be prescribed from time to time by Executive order as authorized by chapter 53 of title 5 or as otherwise authorized by law:

PHYSICIAN AND DENTIST SCHEDULE

[Director grade.
Executive grade.
Chief grade.
Senior grade.
Intermediate grade.
Full grade.
Associate grade].
*Physician grade*
*Dentist grade*

NURSE SCHEDULE

Nurse V.
Nurse IV.

**Kennedy_25**

17

Nurse III.
Nurse II.
Nurse I.

CLINICAL PODIATRIST, CHIROPRACTOR, AND OPTOMETRIST SCHEDULE

Chief grade.
Senior grade.
Intermediate grade.
Full grade.
Associate grade.

[(2) A person may not hold the director grade in the Physician and Dentist Schedule unless the person is serving as a director of a hospital, domiciliary, center, or outpatient clinic (independent) or comparable position. A person may not hold the executive grade in that Schedule unless the person holds the position of chief of staff at a hospital, center, or outpatient clinic (independent), or comparable position.]

(c) Notwithstanding the provisions of section 7425(a) of this title, a person appointed under section 7306 of this title who is not eligible for [special pay] *pay* under subchapter III shall be deemed to be a career appointee for the purposes of sections 4507 and 5384 of title 5.

(d) Except as provided under subchapter III and in [section 7457] *sections 7457 and 7459* of this title, pay may not be paid at a rate in excess of the rate of basic pay for an appropriate level authorized by section 5315 or 5316 of title 5 for positions in the Executive Schedule, as follows:

(1) Level IV for the Deputy Under Secretary for Health.
(2) Level V for all other positions for which such basic pay is paid under this section.

\*        \*        \*        \*        \*        \*        \*

## Subchapter II—Collective Bargaining and Personnel Administration

\*        \*        \*        \*        \*        \*        \*

§ 7426 \* \* \*

*§ 7427. Discretionary nature of functions*

*Any authority assigned to the Secretary or another officer of the Department under this chapter shall be carried out at the discretion of the Secretary or other officer, as the case may be.*

\*        \*        \*        \*        \*        \*        \*

## [Subchapter III—Special Pay for Physicians and Dentist

\*        \*        \*        \*        \*        \*        \*

### [§ 7431. Special pay: administration

[(a) In order to recruit and retain highly qualified physicians and dentists in the Veterans Health Administration, the Secretary shall provide special pay under this subchapter. Such special pay shall be provided under regulations that the Secretary shall prescribe to carry out this subchapter. Before prescribing regulations under this

18

subchapter, the Secretary shall receive the recommendations of the Under Secretary for Health with respect to those regulations.

⟦(b) Special pay may be paid to a physician or dentist under this subchapter only upon the execution of, and for the duration of, a written agreement entered into by the physician or dentist in accordance with section 7432 of this title.

⟦(c) A physician or dentist serving a period of obligated service pursuant to chapter 76 of this title is not eligible for special pay under this subchapter during the first three years of such obligated service, except that, at the discretion of the Secretary and upon the recommendation of the Under Secretary for Health, such a physician or dentist may be paid special pay for full-time status during those three years.

⟦(d) (1) The Secretary may determine categories of positions applicable to either physicians or dentists, or both, in the Veterans Health Administration as to which there is no significant recruitment and retention problem. While any such determination is in effect, the Secretary may not enter into an agreement under this subchapter with a physician or dentist serving in a position covered by the determination. Before making a determination under this paragraph, the Secretary shall receive the recommendations of the Under Secretary for Health with respect to the determination.

⟦(2) Not later than one year after making any such determination with respect to a category of positions, and each year thereafter that such determination remains in effect, the Secretary shall make a redetermination.

⟦(3) Any determination under this subsection shall be in accordance with regulations prescribed to carry out this subchapter.

⟦(e) If the Under Secretary for Health determines that payment of special pay to a physician or dentist who is employed on a less than half-time basis is the most cost-effective way available for providing needed medical or dental specialist services at a Department facility, the Under Secretary for Health may authorize the payment of special pay for factors other than for full-time status to that physician or dentist at a rate computed on the basis of the proportion that the part-time employment of the physician or dentist bears to full-time employment.

⟦(f) Special pay may not be paid under this section to a physician or dentist who—

⟦(1) is employed on less than a quarter-time basis or on an intermittent basis;

⟦(2) occupies an internship or residency training position; or

⟦(3) is a reemployed annuitant.

⟦(g) (1) In the case of a physician or dentist who is employed in a position that is covered by a determination by the Secretary under subsection (d)(1) that the Administration does not have a significant recruitment or retention problem with respect to a particular category of positions and who on the day before the effective date of this subchapter was receiving special pay under an agreement entered into under section 4118 of this title (as in effect before such date), the Secretary may pay to that physician or dentist, in addition to basic pay, retention pay under this subsection.

⟦(2) The annual rate of such retention pay for any individual may not exceed the rate which, when added to the rate of basic pay payable to that individual, is equal to the sum of the annual rate

of basic pay and the annual rate of special pay paid to that physician or dentist pursuant to the final agreement with that individual under such section 4118.

〔(3) Such retention pay shall be treated for all purposes as special pay paid under subchapter III of chapter 74 of this title.

〔(4) Retention pay under this subsection shall be paid under such regulations as the Secretary may prescribe.

## 〔§ 7432. Special pay written agreements

〔(a) An agreement entered into by a physician or dentist under this subchapter shall cover a period of one year of service in the Veterans Health Administration unless the physician or dentist agrees to an agreement for a longer period of service, not to exceed four years, as specified in the agreement. A physician or dentist who has previously entered into such an agreement is eligible to enter into a subsequent agreement unless the physician or dentist has failed to refund to the United States any amount which the physician or dentist is obligated to refund under any such previous agreement.

〔(b) (1) An agreement under this subchapter shall provide that, if the physician or dentist entering into the agreement voluntarily, or because of misconduct, fails to complete any of the years of service covered by the agreement (measured from the anniversary date of the agreement), the physician or dentist shall refund an amount of special pay received under the agreement for that year equal to—

〔(A) in the case of a failure during the first year of service under the agreement, 100 percent of the amount received for that year;

〔(B) in the case of a failure during the second year of service under the agreement, 75 percent of the amount received for that year;

〔(C) in the case of a failure during the third year of service under the agreement, 50 percent of the amount received for that year; and

〔(D) in the case of a failure during the fourth year of service under the agreement, 25 percent of the amount received for that year.

〔(2) (A) The Secretary may waive (in whole or in part) the requirement for a refund under paragraph (1) in any case if the Secretary determines (in accordance with regulations prescribed under section 7431(a) of this title) that the failure to complete such period of service is the result of circumstances beyond the control of the physician or dentist.

〔(B) The Secretary may suspend a special pay agreement entered into under this section in the case of a physician or dentist who, having entered into the special pay agreement, enters a residency training program. Any such 5sasuspension shall terminate when the physician or dentist completes, withdraws from, or is no longer a participant in the program. During the period of such a suspension, the physician or dentist is not subject to the provisions of paragraph (1).

〔(3) Any such agreement shall specify the terms under which the Department and the physician or dentist may elect to terminate the agreement.

**Kennedy_28**

20

[(c) (1) If a proposed agreement under this subchapter will provide a total annual amount of special pay to be provided to a physician or dentist who has previously entered into an agreement under this subchapter (or under section 4118 of this title as in effect before the effective date of the Department of Veterans Affairs Physician and Dentist Recruitment and Retention Act of 1991) that will exceed the previous annual amount of special pay provided for the physician or dentist by more than 50 percent (other than in the case of a physician or dentist employed in an executive position in the Central Office of the Department), or that will be less than the previous annual amount of special pay provided for the physician or dentist by more than 25 percent, the proposed agreement shall be promptly submitted to the Secretary. The proposed agreement shall not take effect if it is disapproved by the Secretary within 60 days after the date on which the physician or dentist entered into the proposed agreement.

[(2) For purposes of paragraph (1), the previous annual amount of special pay provided for a physician or dentist is the total annual amount of special pay provided, or to be provided, to the physician or dentist for the most recent year covered by an agreement entered into by the physician or dentist under this subchapter or under section 4118 of this title. In the case of an agreement entered into under section 4118 of this title, incentive pay shall be treated as special pay for purposes of this paragraph.

[(3) The Secretary shall adjust special pay as necessary for purposes of this subsection to reflect appropriately any change in the status of a physician or dentist (A) from full-time status to part-time status, (B) from part-time status to full-time status, or (C) from one proportion of time spent as a Department employee under part-time status employment to a different proportion.

[(d) (1) If a proposed agreement under this subchapter (other than an agreement in the case of the Under Secretary for Health) will provide a total annual amount of special pay to be provided to a physician or dentist which, when added to the amount of basic pay of the physician or dentist, will be in excess of the amount payable for positions specified in section 5312 of title 5, the proposed agreement shall be promptly submitted for approval to the Secretary through the Under Secretary for Health. The agreement shall take effect at the end of the 60-day period beginning on the date on which the physician or dentist entered into the proposed agreement if it is neither approved nor disapproved within that 60-day period. If the agreement is approved within that period, the agreement shall take effect as of the date of the approval. A proposed agreement may be disapproved under this paragraph only if it is determined that the amounts of special pay proposed to be paid are not necessary to recruit or retain the physician or dentist.

[(2) A proposed agreement under this subchapter with the Under Secretary for Health may provide for payment of special pay for which the Under Secretary for Health is eligible under this subchapter (other than that specified in section 7433(b)(4)(B) of this title) only to the extent specifically approved by the Secretary.

[(3) The Secretary shall include in the annual report required by section 7440 of this title—

　　[(A) a statement of the number of agreements entered into during the period covered by the report under which the total

21

amount of special pay to be provided, when added to the amount of basic pay of the physician or dentist, will be in excess of the amount payable for positions specified in section 5312 of title 5;

⟦(B) a statement of the number of proposed agreements which during the period covered by the report were disapproved under this subsection; and

⟦(C) a detailed explanation of the basis for disapproval of each such proposed agreement which was disapproved under this subsection.

⟦(4) This subsection does not apply to any proposed agreement entered into after September 30, 1994.

⟦§ 7433. Special pay: full-time physicians

⟦(a) The Secretary shall provide special pay under this subchapter to eligible physicians employed on a full-time basis based upon the factors, and at the annual rates, specified in subsection (b).

⟦(b) The special pay factors, and the annual rates, applicable to full-time physicians are as follows:

⟦(1) For full-time status, $9,000.

⟦(2) (A) For length of service as a physician within the Veterans Health Administration—

| Length of Service | Rate | |
|---|---|---|
| | Minimum | Maximum |
| 2 years but less than 4 years | $4,000 | $6,000 |
| 4 years but less than 8 years | 6,000 | 12,000 |
| 8 years but less than 12 years | 12,000 | 18,000 |
| 12 years or more | 12,000 | 25,000 |

⟦(B) The Under Secretary for Health shall specify a uniform national rate for each range of years of service established by or under this paragraph. The Under Secretary for Health may, as to length of service in excess of 12 years, establish uniform national rates for such ranges of years of service as the Under Secretary for Health considers appropriate.

⟦(3)(A) For service in a medical specialty with respect to which there are extraordinary difficulties (on a nationwide basis or on the basis of the needs of a specific medical facility) in the recruitment or retention of qualified physicians, an annual rate of not more than $40,000.

⟦(B) For service by a physician who serves only a portion of a year in a medical specialty for which special pay is paid under subparagraph (A), the annual rate shall be calculated on the basis of the proportion of time served in the specialty for which the special pay is paid.

⟦(4) (A) For service in any of the following executive positions, an annual rate not to exceed the rate applicable to that position as follows:

| Position | Rate | |
|---|---|---|
| | Minimum | Maximum |
| Service Chief (or in a comparable position as determined by the Secretary) | $4,500 | $15,000 |
| Chief of Staff or Executive Grade | 14,500 | 25,000 |

**Kennedy_30**

| Position | [Rate | |
|---|---|---|
| | Minimum | Maximum |
| Director Grade | 0 | 25,000 |

〔(B) For service in any of the following executive positions, the annual rate applicable to that position as follows:

| Position | Rate |
|---|---|
| Deputy Service Director | $20,000 |
| Service Director | 25,000 |
| Deputy Assistant Chief Medical Director | 27,500 |
| Assistant Chief Medical Director | 30,000 |
| Associate Deputy Chief Medical Director | 35,000 |
| Deputy Chief Medical Director | 40,000 |
| Chief Medical Director | 45,000 |

〔(C) For service by a physician who serves only a portion of a year in an executive position listed in subparagraph (A) or (B) or who serves a portion of a year in such a position and also serves a portion of that year in another position or grade for which special pay is provided under this section, the annual rate shall be calculated on the basis of the proportion of time served in the position or positions for which special pay is provided.

〔(5) For specialty certification or first board certification, $2,000, and for subspecialty certification or secondary board certification, an additional $500.

〔(6) For service in a specific geographic location with respect to which there are extraordinary difficulties in the recruitment or retention of qualified physicians in a specific category of physicians, an annual rate of not more than $17,000.

〔(7) (A) For service by a physician with exceptional qualifications within a specialty, an annual rate of not more than $15,000.

〔(B) Special pay under this paragraph may be paid to a physician only if the payment of such pay to that physician is approved by the Under Secretary for Health personally and on a case-by-case basis and only to the extent that the rate paid under this paragraph, when added to the total of the rates paid to that physician under paragraphs (1) through (6), does not exceed the total rate that may be paid under those paragraphs to a physician with the same length of service, specialty, and position as the physician concerned.

### 〔§ 7434. Special pay: part-time physicians

〔(a) Subject to section 7431(e) of this title and subsection (b) of this section, special pay under this subchapter for physicians employed on a part-time basis shall be based on the special-pay factors and annual rates specified in section 7433 of this title.

〔(b) The annual rate of special pay paid to a physician employed on a part-time basis shall bear the same ratio to the annual rate that the physician would be paid under section 7433 (other than for full-time status) if the physician were employed on a full-time basis as the amount of part-time employment by the physician bears to full-time employment, except that such ratio may not exceed 3/4.

23

〚**§ 7435. Special pay: full-time dentists**

〚(a) The Secretary shall provide special pay under this subchapter to eligible dentists employed on a full-time basis based upon the factors, and at the annual rates, specified in subsection (b).

〚(b) The special pay factors, and the annual rates, applicable to full-time dentists are as follows:

〚(1) For full-time status, $9,000.

〚(2) (A) For length of service as a dentist within the Veterans Health Administration—

| Length of Service | Rate | |
|---|---|---|
| | Minimum | Maximum |
| 1 year but less than 2 years | $1,000 | $2,000 |
| 2 years but less than 4 years | 4,000 | 5,000 |
| 4 years but less than 8 years | 5,000 | 8,000 |
| 8 years but less than 12 years | 8,000 | 12,000 |
| 12 years but less than 20 years | 12,000 | 15,000 |
| 20 years or more | 15,000 | 18,000 |

〚(B) The Under Secretary for Health shall specify a uniform national rate for each range of years of service established by or under this paragraph. The Under Secretary for Health may, as to length of service in excess of 12 years, establish uniform national rates for such ranges of years of service as the Under Secretary for Health considers appropriate.

〚(3)(A) For service in a dental specialty with respect to which there are extraordinary difficulties (on a nationwide basis or on the basis of the needs of a specific medical facility) in the recruitment or retention of qualified dentists, an annual rate of not more than $30,000.

〚(B) For service by a dentist who serves only a portion of a year in a dental specialty for which special pay is paid under subparagraph (A), the annual rate shall be calculated on the basis of the proportion of time served in the specialty for which the special pay is paid.

〚(4) (A) For service in any of the following executive positions, an annual rate not to exceed the rate applicable to that position as follows:

| Position | Rate | |
|---|---|---|
| | Minimum | Maximum |
| Chief of Staff or in an Executive Grade | $14,500 | $25,000 |
| Director Grade | 0 | 25,000 |
| Service Chief (or in a comparable position as determined by the Secretary) | 4,500 | 15,000 |

〚(B) For service in any of the following executive positions, the annual rate applicable to that position as follows:

| Position | Rate |
|---|---|
| Deputy Service Director | $20,000 |
| Service Director | 25,000 |
| Deputy Assistant Under Secretary for Health | 27,500 |
| Assistant Under Secretary for Health (or in a comparable position as determined by the Secretary) | 30,000 |

**Kennedy_32**

24

[(C) For service by a dentist who serves only a portion of a year in an executive position listed in subparagraph (A) or (B) or who serves a portion of a year in such a position and also serves a portion of that year in another position or grade for which special pay is provided under this section, the annual rate shall be calculated on the basis of the proportion of time served in the position or positions for which special pay is provided.

[(5) For specialty or first board certification, $2,000 and for subspecialty or secondary board certification, an additional $500.

[(6) For service in a specific geographic location with respect to which there are extraordinary difficulties in the recruitment or retention of qualified dentists in a specific category of dentists, an annual rate not more than $12,000.

[(7)(A) For service by a dentist with exceptional qualifications within a specialty, an annual rate of not more than $5,000.

[(B) Special pay under this paragraph may be paid to a dentist only if the payment of such pay to that dentist is approved by the Under Secretary for Health personally and on a case-by-case basis and only to the extent that the rate paid under this paragraph, when added to the total of the rates paid to that dentist under paragraphs (1) through (6), does not exceed the total rate that may be paid under those paragraphs to a dentist with the same length of service, specialty, and position as the dentist concerned.

[(8) For a dentist who has successfully completed a post-graduate year of hospital-based training in a program accredited by the American Dental Association, an annual rate of $2,000 for each of the first two years of service after successful completion of that training.

### [§ 7436. Special pay: part-time dentists

[(a) Subject to section 7431(e) of this title and subsection (b) of this section, special pay under this subchapter for dentists employed on a part-time basis shall be based on the special-pay factors and annual rates specified in section 7435 of this title.

[(b) The annual rate of special pay paid to a dentist employed on a part-time basis shall bear the same ratio to the annual rate that the dentist would be paid under section 7435 of this title (other than for full-time status) if the dentist were employed on a full-time basis as the amount of part-time employment by the dentist bears to full-time employment, except that such ratio may not exceed 3/4.

### [§ 7437. Special pay: general provisions

[(a) A physician who is provided special pay for service in an executive position under paragraph (4)(B) of section 7433(b) of this title may not also be provided scarce specialty special pay under paragraph (3) of that section. A dentist who is provided special pay for service in an executive position under paragraph (4) of section 7435(b) of this title for service as a Service Director, Deputy Service Director, Deputy Assistant Under Secretary for Health, or As-

25

sistant Under Secretary for Health may not also be provided scarce specialty special pay under paragraph (3) of that section.

〔(b) The following determinations under this subchapter shall be made under regulations prescribed under section 7431 of this title:

〔(1) A determination that there are extraordinary difficulties (on a nation-wide basis or on the basis of the needs of a specific medical facility) in the recruitment or retention of qualified physicians in a medical specialty or in the recruitment or retention of qualified dentists in a dental specialty.

〔(2) A determination of the rate of special pay to be paid to a physician or dentist for a factor of special pay for which the applicable rate is specified as a range of rates.

〔(3) A determination of whether there are extraordinary difficulties in a specific geographic location in the recruitment or retention of qualified physicians in a specific category of physicians or in the recruitment or retention of qualified dentists in a specific category of dentists.

〔(c) A determination for the purposes of this subchapter that there are extraordinary difficulties in the recruitment or retention of qualified physicians in a medical specialty, or in the recruitment or retention of qualified dentists in a dental specialty, on the basis of the needs of a specific medical facility may only be made upon the request of the director of that facility.

〔(d) A physician or dentist may not be provided scarce specialty pay under section 7433(b), 7434(b), 7435(b), or 7436(b) of this title (whichever is applicable) on the basis of the needs of a specific medical facility unless the Secretary also determines that geographic location pay under that section is insufficient to meet the needs of that facility for qualified physicians or dentists, as the case may be.

〔(e) (1) A physician or dentist shall be paid special pay under this subchapter at a rate not less than the rate of special pay the physician or dentist was paid under section 4118 of this title as of the day before the effective date of this subchapter if the physician or dentist—

〔(A) is employed on a full-time basis in the Veterans Health Administration;

〔(B) was employed as a physician or dentist on a full-time basis in the Administration on the day before such effective date; and

〔(C) on such effective date was being paid for no special-pay factors other than primary, full-time, length of service, and specialty or board certification.

〔(2) A physician or dentist shall be paid special pay under this subchapter at a rate not less than the rate of special pay the physician or dentist was paid under section 4118 of this title as of the day before the effective date of this subchapter if the physician or dentist—

〔(A) is employed on a part-time basis in the Veterans Health Administration;

〔(B) was employed as a physician or dentist on a part-time basis in the Administration on the day before such effective date; and

26

⟦(C) on such effective date was being paid for no special-pay factors other than primary, full-time, length of service, and specialty or board certification.

⟦(f) Any amount of special pay payable under this subchapter shall be paid in equal installments in accordance with regularly established pay periods.

⟦(g) Except as otherwise expressly provided by law, special pay may not be provided to a physician or dentist in the Veterans Health Administration for any factor not specified in section 7433, 7434, 7435, or 7436, as applicable, of this title.

⟦(h) In no case may the total amount of compensation paid to a physician or dentist under this title in any year exceed the amount of annual compensation (excluding expenses) specified in section 102 of title 3.

### ⟦§ 7438. Special pay: coordination with other benefits laws

⟦(a) Special pay paid under this subchapter shall be in addition to any other pay and allowances to which a physician or dentist is entitled.

⟦(b)(1) A physician or dentist who has no section 4118 service and has completed not less than 15 years of service as a physician or dentist in the Veterans Health Administration shall be entitled to have special pay paid to the physician or dentist under this subchapter considered basic pay for the purposes of chapter 83 or 84 of title 5, as appropriate.

⟦(2) A physician or dentist who has section 4118 service and has completed a total of not less than 15 years of service as a physician or dentist in the Veterans Health Administration shall be entitled to have special pay paid to the physician or dentist under this subchapter considered basic pay for the purposes of chapter 83 or 84, as appropriate, of title 5 as follows:

⟦(A) In an amount equal to the amount that would have been so considered under section 4118 of this title on the day before the effective date of this section based on the rates of special pay the physician or dentist was entitled to receive under that section on the day before such effective date.

⟦(B) With respect to any amount of special pay received under this subchapter in excess of the amount such physician or dentist was entitled to receive under section 4118 of this title on the day before the effective date of this section, in an amount equal to 25 percent of such excess amount for each two years that the physician or dentist has completed as a physician or dentist in the Veterans Health Administration after the effective date of this section.

⟦(3) All special pay paid under this subchapter shall be included in average pay (as defined in sections 8331(4) or 8401(3) of title 5, as appropriate) for purposes of computing benefits paid under section 8337, 8341 (d) or (e), 8442(b), 8443, or 8451 of such title.

⟦(4) Special pay paid under section 4118 of this title, as in effect before the effective date of this section, to a physician or dentist who has section 4118 service shall be credited to the physician or dentist for the same purposes and in the same manner and to the same extent that such special pay was credited to the physician or dentist before such effective date.

**Kennedy_35**

27

[(5) Notwithstanding paragraphs (1) and (2), a dentist employed as a dentist in the Veterans Health Administration on the date of the enactment of the Veterans Benefits and Health Care Improvement Act of 2000 [enacted Nov. 1, 2000] shall be entitled to have special pay paid to the dentist under section 7435(b)(2)(A) of this title (referred to as "tenure pay") considered basic pay for the purposes of chapter 83 or 84, as appropriate, of title 5 only as follows:

[(A) In an amount equal to the amount that would have been so considered under such section on the day before such date based on the rates of special pay the dentist was entitled to receive under that section on the day before such date.

[(B) With respect to any amount of special pay received under that section in excess of the amount such dentist was entitled to receive under such section on the day before such date, in an amount equal to 25 percent of such excess amount for each two years that the physician or dentist has completed as a physician or dentist in the Veterans Health Administration after such date.

[(6) For purposes of this subsection:

[(A) The term "physician or dentist who has no section 4118 service" means a physician or dentist employed as a physician or dentist in the Veterans Health Administration who has no previous service as a physician or dentist in the Administration (or its predecessor) before the effective date of this section.

[(B) The term "physician or dentist who has section 4118 service" means a physician or dentist employed as a physician or dentist in the Veterans Health Administration who has previous service as a physician or dentist in the Administration (or its predecessor) before the effective date of this section.

[(C) Service in any predecessor entity of the Veterans Health Administration shall be considered to be service in the Veterans Health Administration.

[(c) Compensation paid as special pay under this subchapter or under an agreement entered into under section 4118 of this title (as in effect on the day before the effective date of the Department of Veterans Affairs Physician and Dentist Recruitment and Retention Act of 1991) shall be considered as annual pay for the purposes of chapter 87 of title 5, relating to life insurance for Federal employees.

[§ 7439. Periodic review of pay of physicians and dentists; quadrennial report

[(a) In order to make possible the recruitment and retention of a well qualified work force of physicians and dentists capable of providing quality care for eligible veterans, it is the policy of Congress to ensure that the levels of total pay for physicians and dentists of the Veterans Health Administration are fixed at levels reasonably comparable—

[(1) with the levels of total pay of physicians and dentists employed by or serving in other departments and agencies of the Federal Government and

[(2) with the income of non-Federal physicians and dentists for the performance of services as physicians and dentists.

[(b)(1) To assist the Congress and the President in carrying out the policy stated in subsection (a), the Secretary shall—

**Kennedy_36**

28

⟦(A) define the bases for pay distinctions, if any, among various categories of physicians and dentists, including distinctions between physicians and dentists employed by the Veterans Health Administration and physicians and dentists employed by other departments and agencies of the Federal Government and between all Federal sector and non-Federal sector physicians and dentists; and

⟦(B) obtain measures of income from the employment or practice of physicians and dentists outside the Administration, including both the Federal and non-Federal sectors, for use as guidelines for setting and periodically adjusting the amounts of special pay for physicians and dentists of the Administration.

⟦(2) The Secretary shall submit to the President a report, on such date as the President may designate but not later than December 31, 1994, and once every four years thereafter, recommending appropriate rates of special pay to carry out the policy set forth in subsection (a) with respect to the pay of physicians and dentists in the Veterans Health Administration. The Secretary shall include in such report, when considered appropriate and necessary by the Secretary, recommendations for modifications of the special pay levels set forth in this subchapter whenever—

⟦(A) the Department is unable to recruit or retain a sufficient work force of well-qualified physicians and dentists in the Administration because the incomes and other employee benefits, to the extent that those benefits are reasonably quantifiable, of physicians and dentists outside the Administration who perform comparable types of duties are significantly in excess of the levels of total pay (including basic pay and special pay) and other employee benefits, to the extent that those benefits are reasonably quantifiable, available to those physicians and dentists employed by the Administration; or

⟦(B) other extraordinary circumstances are such that special pay levels are needed to recruit or retain a sufficient number of well-qualified physicians and dentists.

⟦(c) The President shall include in the budget transmitted to the Congress under section 1105 of title 31 after the submission of each report of the Secretary under subsection (b)(2) recommendations with respect to the exact rates of special pay for physicians and dentists under this subchapter and the cost of those rates compared with the cost of the special pay rates in effect under this subchapter at the time the budget is transmitted.

## ⟦§ 7440. Annual report

⟦The Secretary shall submit to the Committees on Veterans' Affairs of the Senate and House of Representatives an annual report on the use of the authorities provided in this subchapter. The report shall be submitted each year as part of the budget justification documents submitted by the Secretary in support of the budget of the President submitted pursuant to section 1105 of title 31 that year. Each such report shall include the following:

⟦(1) A review of the use of the authorities provided in this subchapter (including the Secretary's and Under Secretary for Health's actions, findings, recommendations, and other activities under this subchapter) during the preceding fiscal year and the fiscal year during which the report is submitted.

29

〔(2) The plans for the use of the authorities provided in this subchapter for the next fiscal year.

〔(3) A description of the amounts of special pay paid during the preceding fiscal year, shown by category of pay.

〔(4) A list of those geographic areas, and those scarce specialties, for which special pay was paid during the preceding fiscal year, those for which special pay is being paid during the current fiscal year, and those for which special pay is expected to be paid during the next fiscal year, together with a summary of any differences among those three lists.

〔(5) The number of physicians and dentists (A) who left employment with the Veterans Health Administration during the preceding year, (B) who changed from full-time status to part-time status, (C) who changed from part-time status to full-time status, as well as (D) a summary of the reasons therefor.

〔(6) By specialty, the number of positions created and the number of positions abolished during the preceding fiscal year and a summary of the reasons for such actions.

〔(7) The number of unfilled physician and dentist positions in each specialty in the Veterans Health Administration, the average and maximum lengths of time that such positions have been unfilled, and a summary of the reasons that such positions remain unfilled and, in the case of any specialty not designated as a scarce specialty for purposes of special pay under this subchapter, an explanation (including comparisons with other specialties that have been so designated) of why the specialty has not been so designated.〕

\*            \*            \*            \*            \*            \*            \*

### Subchapter III—Pay for Physicians and Dentists

### §7431. Pay

(a) ELEMENTS OF PAY.—Pay of physicians and dentists in the Veterans Health Administration shall consist of three elements as follows:

(1) Base pay as provided for under subsection (b)

(2) Market pay as provided for under subsection (c)

(3) Incentive pay as provided for under subsection (d)

(b) BASE PAY.—One element of pay for physicians and dentists shall be base pay. Base pay shall meet the following requirements:

(1) Each physician and dentist is entitled to base pay determined under the Physician and Dentist Base and Longevity Pay Schedule.

(2) The Physician and Dentist Base and Longevity Pay Schedule is composed of 15 rates of base pay designated, from the lowest rate of pay to the highest rate of pay, as base pay steps 1 through 15.

(3) The rate of base payable to a physician or dentist is based on the total number of the years of the service of the physician or dentist in the Veterans Health Administration as follows:

| For a physician or dentist with total service of: | The rate of base pay is the rate payable for: |
| --- | --- |
| two years or less | step 1 |
| more than 2 years and not more than 4 years | step 2 |
| more than 4 years and not more than 6 years | step 3 |

**Kennedy_38**

30

| For a physician or dentist with total service of: | The rate of base pay is the rate payable for: |
|---|---|
| more than 6 years and not more than 8 years ............................ | step 4 |
| more than 8 years and not more than 10 years ........................... | step 5 |
| more than 10 years and not more than 12 years ......................... | step 6 |
| more than 12 years and not more than 14 years ......................... | step 7 |
| more than 14 years and not more than 16 years ......................... | step 8 |
| more than 16 years and not more than 18 years ......................... | step 9 |
| more than 18 years and not more than 20 years ......................... | step 10 |
| more than 20 years and not more than 22 years ......................... | step 11 |
| more than 22 years and not more than 24 years ......................... | step 12 |
| more than 24 years and not more than 26 years ......................... | step 13 |
| more than 26 years and not more than 28 years ......................... | step 14 |
| more than 28 years ...................................................... | step 15 |

(4) At the same time as rates of basic pay are increased for a year under section 5303 of title 5, the Secretary shall increase each rate of basic pay payable under this subsection for that year by a percentage equal to the percentage by which rates of basic pay are increased under such section for that year.

(c) MARKET PAY.—One element of pay for physicians and dentists shall be market pay. Market pay shall meet the following requirements:

(1) Subject to paragraph (3), each physician and dentist is eligible for market pay.

(2) Market pay shall consist of pay intended to reflect the value to the Veterans Health Administration of the skills, experience, and availability of a particular physician or dentist within a particular health care labor market.

(3) The annual amount of the market pay payable to a physician or dentist shall be determined by the Secretary on a case-by-case basis, subject to paragraph (5). The sum of the total amount of the market pay determined for a physician or dentist under this subsection and the annual rate of base pay payable to the physician or dentist under subsection (b) may not be less than the minimum amount, nor more than the maximum amount, applicable to the physician or dentist under paragraph (4).

(4)(A) Not less often than once every two years, the Secretary shall prescribe for Department-wide applicability the minimum and maximum amounts of annual pay (excluding incentive pay under subsection (d)) that may be paid under this section to physicians and the minimum and maximum amounts of annual pay (excluding incentive pay under subsection (d)) that may be paid under this section to dentists.

*no market Leader*

(B) The Secretary may prescribe for Department-wide applicability under this paragraph separate minimum and maximum amounts of pay for a specialty or subspecialty. If the Secretary prescribes separate minimum and maximum amounts for a specialty or subspecialty, the Secretary may establish up to four tiers of minimum and maximum amounts for such specialty or subspecialty and prescribe for each tier a minimum amount and a maximum amount that the Secretary determines appropriate for the professional responsibilities, professional achievements, and administrative duties of the physicians or dentists (as the case may be) whose pay is set within that tier.

(5)(A) In determining the amount of the market pay for a physician or dentist and determining a tier (if any) to apply to a physician or dentist under paragraph (4)(B), the Secretary

31

shall consult with and consider the recommendations of the Medical Professional Standards Board for the medical facility of the Department at which the physician or dentist is employed, except in the case of a physician or dentist whose market pay is determined under subparagraph (B).

(B) In the case of a physician or dentist who is a member of a Medical Professional Standards Board, the Secretary shall determine the amount of market pay and the tier (if any) applicable to the physician or dentist under paragraph (4)(B) in accordance with such procedures and standards as the Secretary shall prescribe. Such procedures and standards shall, to the maximum extent practicable, be similar to the procedures and standards applicable to determinations of the amount of market pay and the tier applicable to physicians and dentists under paragraph (4)(B) who are not members of a board. Under such regulations, no member of a board may participate in or have a consultative role in determining that amount of market pay or tier of such member or any other member of such board.

(C) A Medical Professional Standards Board consulted under this subparagraph shall consist of at least three and not more than five persons, each of whom is either a physician or a dentist. Not less than a majority of the members of the board shall be practicing clinicians in their professions.

(6) Subject to paragraph (7), the determination of the amount of market pay of a physician or dentist shall take into account—

(A) the level of experience of the physician or dentist in the specialty or subspecialty of the physician or dentist;

(B) the need for the specialty or subspecialty of the physician or dentist at the Department facility concerned;

(C) the health care labor market for the specialty or subspecialty of the physician or dentist, which may cover any geographic area the Secretary considers appropriate for the specialty or subspecialty;

(D) the professional reputation of the physician or dentist;

(E) the board certifications, if any, of the physician or dentist;

(F) the prior experience, if any, of the physician or dentist as an employee of the Veterans Health Administration; and

(G) such other considerations as the Secretary considers appropriate.

(7) The amount that any consideration specified in paragraph (6) may contribute to the amount of market pay may not exceed, or be less than, such amount as the Secretary may specify in regulations prescribed under section 7433 of this title, or in directives issued for purposes of this subsection.

(8) In determining amounts of market pay, the Secretary:

(A) shall consult two or more national surveys of pay for physicians or dentists, as applicable, whether prepared by public, private, or quasi-public entities, and

(B) may utilize the recommendations or assistance of one or more boards of physicians or dentists, as applicable, that are appointed by the Secretary for purposes of this subsection.

Kennedy_40

32

(9) The amount of market pay of a physician or dentist shall be adjusted at such times as the Secretary considers appropriate in order to ensure the retention of quaffed physicians and dentists by the Veterans Health Administration.

(10) The amount of market pay of a physician or dentist shall be evaluated by the Secretary not less often than once every 24 months. The amount of market pay may be adjusted as the result of an evaluation under this paragraph. A physician or dentist whose market pay is increased by reason of an evaluation under this paragraph shall receive written notice of the increase in accordance with procedures prescribed under section 7433 of this title.

(11) No adjustment of the amount of market pay of a physician or dentist under paragraph (9) or (10) may result in a reduction of the amount of market pay of the physician or dentist.

(d) INCENTIVE PAY.—One element of pay for physicians and dentists shall be incentive pay. Incentive pay shall meet the following requirements

(1) Each physician and dentist is eligible for incentive pay.

(2) Incentive pay shall consist of an amount intended to recognize outstanding contributions by a physician or dentist to

(A) the facility in which employed;

(B) the furnishing of care to veterans; or

(C) the practice of medicine or dentistry, as applicable.

(3) The amount of incentive pay shall be determined for a physician or dentist by the Secretary.

(4) The amount of incentive pay shall be determined for a physician or dentist on a case-by-case basis.

(5) The amount of incentive pay paid to a physician or dentist in a calendar year may not exceed $10,000.

(e) DELEGATION OF RESPONSIBILITIES.—The Secretary may delegate to an appropriate officer or employee of the Department any responsibility of the Secretary under subsection (c) or (d), except for the responsibilities of the Secretary under subsection (c)(4).

(f) LIMITATION ON TOTAL COMPENSATION.—In no case may the total amount of compensation paid to a physician or dentist under this section in any year exceed the amount of annual compensation (excluding expenses) specified in section 102 of title 3.

(g) TREATMENT OF PAY.—(1) Except as provided in paragraph (2), pay under this subchapter shall be considered pay for all purposes, including retirement benefits under chapters 83 and 84 of title 5 and 34 other benefits.

(2) Incentive pay under subsection (d) shall not be considered pay for purposes of retirement benefits under chapters 83 and 84 of title 5.

(h) DECREASES IN CERTAIN PAY NOT TREATABLE AS ADVERSE ACTION.—A decrease in pay of a physician or dentist resulting from an adjustment in the amount of incentive pay of the physician or dentist under subsection 19(d) shall not be treated as an adverse action.

### §7432. Pay of Under Secretary for Health

(a) BASE PAY.—The base pay of the Under Secretary for Health shall be the annual rate of basic pay for positions at Level III of the Executive Schedule under section 5314 of title 5.

33

*(b)* MARKET PAY.—*(1) In the case of an Under Secretary for Health who is also a physician or dentist, in addition to the base pay specified in subsection (a) the Under Secretary for Health may also be paid the market pay element of pay of physicians and dentists under section 7431(c) of this title.*

*(2) The amount of market pay of the Under Secretary for Health under this subsection shall be established by the Secretary.*

*(3) In establishing the amount of market pay of the Under Secretary for Health under this subsection, the Secretary shall utilize an appropriate health care labor market selected by the Secretary for purposes of this subsection.*

### §7433. Administrative matters

*(a)* REGULATIONS.—*(1) The Secretary shall prescribe regulations relating to the pay of physicians and dentists in the Veterans Health Administration under this subchapter. In prescribing the regulations, the Secretary shall take into account the recommendations of the Under Secretary for Health on the administration of this subchapter.*

*(b)* REPORTS.—*(1) Not later than 18 months after the Secretary prescribes the regulations required by subsection (a), and annually thereafter for the next 10 years, the Secretary shall submit to the Committees on Veterans' Affairs of the Senate and House of Representatives a report on the pay of physicians and dentists in the Veterans Health Administration under this subchapter.*

*(2) Each report under this subsection shall include the following*

*(A) A description of the rates of pay in effect during the preceding fiscal year with a comparison to the rates in effect during the fiscal year preceding that fiscal year, set forth by facility and by specialty.*

*(B) The number of physicians and dentists who left the Veterans Health Administration during the preceding fiscal year.*

*(C) The number of unfilled physician positions and dentist positions in each specialty in the Veterans Health Administration, the average and maximum lengths of time that such positions have been unfilled, and an assessment of the reasons that such positions remain unfilled.*

*(D) An assessment of the impact of implementation of this subchapter on efforts to recruit and retain physicians and dentists in the Veterans Health Administration.*

*(3) The first two annual reports under this subsection shall also include a comparison of staffing levels, contract expenditures, and average salaries of physicians and dentists in the Veterans Health Administration for the fiscal year preceding such report and for the fiscal year preceding such fiscal year, set forth by facility and by specialty.*

\*    \*    \*    \*    \*    \*    \*

## Subchapter V—Pay for Nurses and Other Health Care Personnel

\*    \*    \*    \*    \*    \*    \*

34

## § 7452. Nurses and other health-care personnel administration of pay

(a) * * *

\* \* \* \* \* \* \*

*(g)(1) In order to recruit and retain highly qualified Department nurse executives, the Secretary may, in accordance with regulations prescribed by the Secretary, pay special pay to the nurse executive at each location as follows*

*(A) Each Department healthcare facility*
*(B) The Central Office.*

*(2) The amount of special pay paid to a nurse executive under paragraph (1) shall be not less than $10,000 or more than $25,000.*

*(3) The amount of special pay paid to a nurse executive under paragraph (1) shall be based on factors such as the grade of the nurse executive position, the scope and complexity of the nurse executive position, the personal qualifications of the nurse executive, the characteristics of the healthcare facility concerned, the nature and number of specialty care units at the healthcare facility concerned, demonstrated difficulties in recruitment and retention of nurse executives at the healthcare facility concerned, and such other factors as the Secretary considers appropriate.*

*(4) Special pay paid to a nurse executive under paragraph (1) shall be in addition to any other pay (including basic pay) and allowances to which the nurse executive is entitled, and shall be considered pay for all purposes, including retirement benefits under chapters 83 and 84 of title 5, and other benefits, but shall not be considered basic pay for purposes of adverse actions under subchapter V.*

\* \* \* \* \* \* \*

## § 7456 * * *

### § 7456A. Nurses: alternate work schedules

*(a) APPLICABILITY.—This section applies to registered nurses appointed under this chapter.*

*(b) 36/40 WORK SCHEDULE.—(1) Subject to paragraph (2), if the Secretary determines it be necessary in order to obtain or retain the services of registered nurses at any Department health-care facility, the Secretary may provide, in the case of nurses employed at such facility, that such nurses who work three regularly scheduled 12 hour tours of duty within a workweek shall be considered for all purposes (except computation of full-time equivalent employees for the purposes of determining compliance with personnel ceilings) to have worked a full 40-hour basic workweek.*

*(2)(A) Basic and additional pay for a nurse who is considered under paragraph (1) to have worked a full 40-hour basic workweek shall be subject to subparagraphs (B) and (C).*

*(B) The hourly rate of basic pay for a nurse covered by this paragraph for service performed as part of a regularly scheduled 36-hour tour of duty within the workweek shall be derived by dividing the nurse's annual rate of basic pay by 1,872.*

*(C)(i) A nurse covered by this paragraph is entitled to overtime pay for work performed in such periods as the Secretary shall prescribe.*

**Kennedy_43**

(ii) Except as otherwise provided in clause (i), a nurse covered by this paragraph is not entitled to additional pay under section 7453 of this title, or other applicable law, for any period included in a regularly scheduled 12-hour tour of duty.

(3) A nurse who works a work schedule described in this subsection who is absent on approved sick leave or annual leave during a regularly scheduled 12-hour tour of duty shall be charged for such leave at a rate of ten hours of leave for every nine hours of absence.

(4) A nurse working a work schedule under this subsection shall be eligible for holiday pay under section 7453(d) of this title for any service performed by the nurse on a designated holiday under such section, regardless of whether such holiday occurs during or outside the nurse's regularly scheduled tour of duty under such work schedule.

(c) 9-MONTH WORK SCHEDULE FOR CERTAIN NURSES.—

(1) The Secretary may authorize a registered nurse appointed under section 7405 of this title, with the nurse's written consent, to work full-time for nine months with 3 months off duty, within a fiscal year, and be paid at 75 percent of the full-time rate for such nurse's grade for each pay period of such fiscal year.

(2) A nurse who works under the authority in paragraph (1) shall be considered a 0.75 full-time equivalent employee in computing full-time equivalent employees for the purposes of determining compliance with personnel ceilings.

(3) Work under this subsection shall be considered part-time service for purposes of computing benefits under chapters 83 and 84 of title 5.

(4) A nurse who works under the authority in paragraph (1) shall be considered a full-time employee for purposes of chapter 89 of title 5.

(d) TREATMENT AS FULL-TIME EMPLOYEE.—(1) A nurse working a work schedule under subsection (b) or (c) who is a full-time employee in non-probationary status at the commencement of work under such work schedule shall remain a full-time employee in nonprobationary status while working under such work schedule.

(2)(A) A nurse under a part-time appointment under section 7405(d) of this title who, while working a work schedule under subsection (b) or (c), performs hours of service (as determined in accordance with such subsection) equivalent to two years of service shall be treated as a full-time employee and no longer in probationary status.

(B) In determining the hours of service performed by a nurse for purposes of subparagraph (A), any hours of service not performed under a work schedule under subsection (b) or (c) shall not be included.

(e) NOTIFICATION OF MODIFICATION OF BENEFITS.—The Secretary shall provide each nurse with respect to whom an alternate work schedule under this section may apply written notice of the effect, if any, the alternate work schedule will have on the nurses health care premium, retirement, life insurance premium, probationary status, or other benefit or condition of employment. The notice shall be provided not later than 14 days before the nurse consents to the alternate work schedule.

36

(f) REGULATIONS.—(1) The Secretary shall prescribe regulations to carry out this section.".

\*        \*        \*        \*        \*        \*        \*

### § 7459. Director of Nursing Service: rate of pay

(a) SENIOR EXECUTIVE SERVICE ES–6 RATE.—The rate of pay for the Director of Nursing Service shall be equal to the sum of the maximum rate of basic pay established for the Senior Executive Service under section 5382 of title 5 and the amount of the locality-based comparability payment provided under section 5304 of such title for the Director's locality.

(b) INAPPLICABILITY OF NURSE PAY PROVISION.—Section 7451 of this title does not apply to the Director of Nursing Service.".

\*        \*        \*        \*        \*        \*        \*

○