IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Richard M. Kennedy, III, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 3:15-1844-MBS-KDW |
| | ) | |
| v. | ) | Report and Recommendation |
| | ) | |
| Robert A. McDonald, in his official | ) | |
| capacity as Secretary of the U.S. | ) | |
| Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This employment litigation is before the court on the parties' cross-motions for summary

judgment, ECF Nos. 38, 41.[1] Plaintiff Richard M. Kennedy, III ("Kennedy" or "Plaintiff"), is an

anesthesiologist who has been employed at the William Jennings Bryan Dorn Veterans

Administrative Medical Center ("Dorn VA") in Columbia, South Carolina since August 1998.

Plaintiff brought this litigation against Defendant Robert McDonald in his official capacity as

Secretary of the U.S. Department of Veterans Affairs (referred to herein as "Defendant," "VA,"

or the "Secretary") pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C.

§§ 633a ("ADEA"). Plaintiff challenges the VA's method of determining his compensation and

the compensation of other Dorn VA anesthesiologists. More particularly, Plaintiff challenges the

VA's interpretation and implementation of the "market pay" provisions of the Department of

Veterans Affairs Health Care Personnel Enhancement Act of 2004 (the "Pay Act"), codified at

38 U.S.C. § 7431. Plaintiff asserts the allegedly improper interpretation and implementation of

---

[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)
(D.S.C.) for a Report and Recommendation ("Report") on these cross-motions.

the Pay Act results in an ADEA violation because it has a disparate impact[2] on his compensation and the compensation of other older Dorn VA staff anesthesiologists. Plaintiff also seeks a declaratory judgment ("DJ") asking the court to determine the proper construction and application of the Pay Act and to apply the proper statutory procedure to recalculate Plaintiff's pay from 2007 through the present. *See* Compl. ¶¶ 31–45.

After discovery, Plaintiff and Defendant each filed a Motion for Summary Judgment. The parties agree there are no material facts in dispute. Rather, each party seeks judgment as a matter of law based on the law as applied to undisputed facts; in its Motion, Defendant also asserts several defenses to recovery. These Motions have been fully briefed. *See* Pl.'s Mot. Partial Summ. J.[3], ECF No. 41; Def.'s Resp. to Pl.'s Mot., 48; Pl.'s Reply in Support of Mot., ECF No. 51; Def.'s Mem. in Support of Mot Summ. J., ECF No. 38-1; Pl.'s Resp. to Def.'s Mot., ECF No. 47; Def.'s Reply in Support of Mot., ECF No. 52. Having reviewed the parties' submissions and the applicable law, the undersigned recommends Defendant's Motion for Summary Judgment, ECF No. 38, be *granted*, and Plaintiff's Motion for Summary Judgment, ECF No. 41, be *denied*.

I.    Applicable Law

    A.    Standard of Review for Cross-Motions for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine dispute of material fact exists when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party under the applicable law. *Matsushita*

---

[2] Plaintiff's ADEA cause of action originally included both a disparate-treatment and a disparate-impact component, *see id.* ¶¶ 38–39; however, Plaintiff is now only pursuing the disparate-impact portion of his ADEA claim. *See* ECF No. 47 at 2 n.1.

[3] Plaintiff seeks summary judgment as to liability only.

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). When considering cross-motions for summary judgment, the court "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation omitted). In considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion. *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir.1996)). Here, neither party's opposition to the other's Motion focuses on any alleged factual disputes that would impact the entry of summary judgment. While the parties frame some issues differently, their arguments are largely mirror-images of each other. Accordingly, in large part, the undersigned analyzes the issues raised simultaneously, taking care to "resolve all factual disputes and competing rational inferences in favor of the party opposing that motion, to ascertain whether 'either of the parties deserves judgment as a matter of law.'" *Pettis v. Nottoway Cnty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (quoting *Rossignol*, 316 F.3d at 523).

  B. The Federal-Sector Section of the ADEA

   The ADEA as originally enacted, 29 U.S.C. § 621 *et seq.,* did not provide for actions against federal-sector employers. In 1974, Congress amended the ADEA to extend its protections to federal-sector employees, enacting a separate provision of the ADEA applicable to the federal sector: 29 U.S.C. § 633a. *See Lehman v. Nakshian*, 453 U.S. 156 (1981). The portion of the ADEA applicable to federal employees and employers provides that personnel actions of federal employees "who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The ADEA does not define the phrase "any discrimination based on age." In large measure, the federal-sector portion of the ADEA stands alone.

Subsection (f) provides that § 633a "shall not be subject to, or affected by, any provision of this chapter, other than the provisions of sections 626(d)(3) and 631(b) of this title and the provisions of this section." 29 U.S.C.A. § 633a(f). *See Lehman*, 453 U.S. at 168 (finding no right to jury trial for federal-sector employee's ADEA claim).[4]

Here, Plaintiff proceeded directly with a civil suit, as is permitted by § 633a. 29 U.S.C. § 633a(c) ("Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes" of the ADEA.). A federal employee wishing to proceed directly with a civil suit must give "not less than 30 days' notice of the intent to file such an action" to the Equal Employment Opportunity Commission ("EEOC"). 29 C.F.R. § 1614.201(a). Plaintiff provided such notice, *see* Compl. ¶ 5, and Defendant does not challenge the timeliness of his claim.

II.     Facts

Substantively, this case principally concerns the VA's interpretation and implementation of the Pay Act when determining Plaintiff's compensation and whether the VA's implementation and interpretation of the Pay Act—in particular the calculation of the "market pay" component of Plaintiff's total compensation—violates the ADEA. *See* 38 U.S.C. § 7431.

A.     The Pay Act establishes annual pay for VA physicians

In 2004, recognizing the VA faced severe recruitment and retention difficulties due to inadequate pay, Congress passed the Pay Act (the Department of Veterans Affairs Health Care Personnel Enhancement Act of 2004, Pub. L. 108-445) to address a widening pay gap between the salaries of VA physicians and dentists and the pay earned by physicians and dentists in the private and academic sectors. *See* Statement of Hon. Robert H. Roswell, M.D., Under Secretary

---

[4] Theories of recovery and types of relief available under the federal-sector provision of the ADEA are at issue and are discussed within.

for Health Dep't of Veterans Affairs before U.S. House of Rep., Oct. 21, 2003, *available at* http://www.va.gov/OCA/testimony/hvac/sh/03102110.asp (last visited Dec. 20, 2016) *(quoted in* Pl.'s Mem. 1–3, ECF No. 41); *see also* Senate Report of Committee on Veterans Affairs (Sept. 23, 2004) (cited in Def.'s Mem. 66, ECF No. 38-1, copy available at ECF No. 38-2). The Pay Act provides that the pay of VA physicians "shall consist of three elements"—base pay, market pay, and performance pay. 38 U.S.C § 7431(a). The statute sets out requirements for the Secretary to review particular national pay surveys and to consult with "an appropriate board composed of [] physicians[,]" as set out in the statute. § 7431(c)(4)(B). At least every two years, the Secretary "shall prescribe for Department-wide applicability the minimum and maximum amounts of annual pay that may be paid" to physicians. § 7431(e)(1)(A). The Secretary "may establish up to four tiers of minimum and maximum amounts for" specific specialties or assignments. § 7431(e)(1)(B).

The Pay Act includes detailed provisions regarding the three pay elements it creates. "Base pay" is set based on the years a physician has been employed by the VA, and the amount is set by the "Physician and Dentist Base and Longevity Pay Schedule," which includes 15 "steps." *See* 38 U.S.C. § 7431(b). All physicians begin at Step 1, regardless of their years of non-VA experience, and move up one step every two years. A copy of the 2016 Physician and Dentist Base and Longevity Pay Schedule is available at http://www.va.gov/OHRM/Pay/2016/PhysicianDentist/PhysicianDentistBaseLongevityRates.pdf (last visited Dec. 20, 2016). The calculation of Plaintiff's base pay is not at issue. Nor does

Plaintiff challenge the "performance pay" component of his compensation. *See* 28 U.S.C. § 7431(d).[5]

Plaintiff contends the VA's calculation of the "market pay" element of compensation for himself and other VA anesthesiologists has not taken place in accordance with Congress' mandate set out in the Pay Act. The Pay Act specifies that market pay is "intended to reflect the recruitment and retention needs for the specialty or assignment . . . of a particular physician or dentist" in a VA facility. 38 U.S.C. § 7431(c)(2). The "annual amount of the market pay payable to a physician or dentist shall be determined by the Secretary [of the VA] on a case-by-case basis." § 7431(c)(3).

At the heart of Plaintiff's issue with how market pay is set is his allegation that Defendant does not follow the statutory mandate to consider the factors set out in subsection (5) of section (c):

> (5) The determination of the amount of market pay of a physician or dentist shall take into account--
> (A) the level of experience of the physician or dentist in the specialty or assignment of the physician or dentist;
> (B) the need for the specialty or assignment of the physician or dentist at the medical facility of the Department concerned;
> (C) the health care labor market for the specialty or assignment of the physician or dentist, which may cover any geographic area the Secretary considers appropriate for the specialty or assignment;
> (D) the board certifications, if any, of the physician or dentist;
> (E) the prior experience, if any, of the physician or dentist as an employee of the Veterans Health Administration; and
> (F) such other considerations as the Secretary considers appropriate.

38 U.S.C. § 7431(c)(5). Plaintiff claims Defendant's improper consideration of these factors has a disparate impact on him and other older anesthesiologists.

---

[5] Performance pay of up to $15,000 is intended to recognize outstanding contributions by a physician to the facility or to veterans or the general practice of medicine. § 7431(d). Plaintiff received $15,000, the maximum performance pay allowed, and performance pay is not at issue in this litigation.

B.     The pay at issue

Plaintiff began working as an anesthesiologist at Dorn VA in 1998; prior to beginning at Dorn VA, he worked in private practice for approximately three years. Pl. Dep. 11–12, ECF No. 41-4. Before the Dorn VA Compensation Panel was to meet in early 2014 to review Plaintiff's pay, Plaintiff communicated a request to Dorn VA's then-Chief of Anesthesiology, Dr. Miller, that the Compensation Panel (the "Panel") increase the market pay component of his annual salary. *Id.* at 90-91. Plaintiff provided the Panel with a curriculum vitae and copies of articles he had written and awards he had received. *Id.* at 92–99. After the Panel met, Plaintiff was advised the market pay component of his compensation would remain at $167,738. *See* Pl.'s Mem. 11.

Plaintiff testified at deposition that he first became aware of an "issue" with the manner market pay was administered when he sat as acting Chief of Anesthesiology at a Compensation Panel that had been convened to determine the salary of a newly hired anesthesiologist, Dr. Alghothani. Pl.'s Dep. 44. At that Panel meeting, a representative of the Human Resources Department ("HR") advised the Panel that the new hire's salary should be set at a total of $288,500 and requested that the Panel agree to that figure. At no time during the meeting was there any presentation or discussion of "market pay." *Id.* at 44–45. Plaintiff asked the HR representative what Dr. Alghothani's market pay rate was, and the HR representative calculated it at approximately $188,000, which Plaintiff knew was at least $20,000 higher than the market pay component of his own salary. *Id.* at 44–47, 63.

Subsequently, Plaintiff submitted a Freedom of Information Act ("FOIA") request for information regarding the market pay of other Dorn VA anesthesiologists. Plaintiff received the requested information on September 24, 2014. A chart of pay information as to all Dorn VA

Anesthesiologists as of December 2014 is available at ECF No. 41-15. *See also* comprehensive chart provided by Defendant at ECF No. 48-6.

The relevant age and pay information is available in the following chart, which was provided by Defendant but includes the same information found in Plaintiff's documents:

| VA hire year: | | 1998 | | | 2005 | | | 2011 | | | 2013 | | | 2014 | | |
| Birth year: | | 1951 | | | 1954 | | | 1957 | | | 1962 | | | 1966 | | |
| Age at hire: | | 47 | | | 51 | | | 54 | | | 51 | | | 48 | | |
| | | Kennedy | | | Pryor | | | Pender | | | Nguyen | | | Alghothani | | |
| | | | Years of Anes Exp | | | Years of Anes Exp | | | Years of Anes Exp | | | Years of Anes Exp | | | Years of Anes Exp | |
| YEAR | PAY TYPE | PAY $ | Total | VA | PAY $ | Total | VA | PAY $ | Total | VA | PAY $ | Total | VA | PAY $ | Total | VA |
| 2006 | Base | $102,000 | | | $90,000 | | | | | | | | | | | |
| | Market | $156,000 | 11 | 8 | $150,000 | 10 | 1 | | | | | | | | | |
| | Total | $258,000 | | | $240,000 | | | | | | | | | | | |
| 2007 | Base | $106,326 | | | $96,945 | | | | | | | | | | | |
| | Market | $156,000 | 12 | 9 | $150,000 | 11 | 2 | | | | | | | | | |
| | Total | $262,326 | | | $246,945 | | | | | | | | | | | |
| 2008 | Base | $109,453 | | | $96,945 | | | | | | | | | | | |
| | Market | $156,000 | 13 | 10 | $165,055 | 12 | 3 | | | | | | | | | |
| | Total | $265,453 | | | $262,000 | | | | | | | | | | | |
| 2009 | Base | $112,629 | | | $102,975 | | | | | | | | | | | |
| | Market | $156,000 | 14 | 11 | $165,055 | 13 | 4 | | | | | | | | | |
| | Total | $268,629 | | | $268,030 | | | | | | | | | | | |
| 2010 | Base | $117,589 | | | $104,521 | | | | | | | | | | | |
| | Market | $167,738 | 15 | 12 | $176,911 | 14 | 5 | | | | | | | | | |
| | Total | $285,327 | | | $281,432 | | | | | | | | | | | |
| 2011 | Base | $117,589 | | | $104,521 | | | $97,987 | | | | | | | | |
| | Market | $167,738 | 16 | 13 | $176,911 | 15 | 6 | $181,013 | 14 | 0 | | | | | | |
| | Total | $285,327 | | | $284,699 | | | $279,000 | | | | | | | | |
| 2012 | Base | $120,856 | | | $107,788 | | | $97,987 | | | | | | | | |
| | Market | $167,738 | 17 | 14 | $176,911 | 16 | 7 | $181,013 | 15 | 1 | | | | | | |
| | Total | $288,594 | | | $284,699 | | | $279,000 | | | | | | | | |
| 2013 | Base | $120,856 | | | $107,788 | | | $102,266 | | | $97,987 | | | | | |
| | Market | $167,738 | 18 | 15 | $176,911 | 17 | 8 | $187,246 | 16 | 2 | $190,513 | 21 | 0 | | | |
| | Total | $288,594 | | | $284,699 | | | $289,512 | | | $288,500 | | | | | |
| 2014 | Base | $122,060 | | | $112,163 | | | $102,266 | | | $98,967 | | | $98,967 | | |
| | Market | $167,738 | 19 | 16 | $176,911 | 18 | 9 | $187,246 | 17 | 3 | $190,513 | 22 | 1 | $189,533 | 13 | 0 |
| | Total | $289,798 | | | $289,074 | | | $289,512 | | | $289,480 | | | $288,500 | | |
| | Base | $126,613 | | | $116,617 | | | $103,289 | | | $99,957 | | | $99,957 | | |

*See* ECF No. 48-6. Based on the same information in this chart, Defendant sets out the following undisputed facts:

1. In December 2014, there were five anesthesiologists employed at the Dorn VA; they were supervised by Dr. Miller, the Chief of Anesthesiology.

2. All five of the anesthesiologists were over 40 when they began their career as VA anesthesiologists. In fact, at 47 years of age when he was hired in 1998, Dr. Kennedy was the youngest hire.

3. In December 2014, Dr. Algothani was the youngest anesthesiologist on staff at 48 and Dr. Kennedy was the oldest at 63.

4. In December 2014, Dr. Kennedy was one of the least experienced as a physician: he had 24 years as an M.D.; only Dr. Pender with 22 years' experience had less overall medical experience than Dr. Kennedy.

5. In December 2014, the experience since their anesthesia residency of the five anesthesiologists ranged from 14 years for Dr. Alghothani to 23 years for Dr. Nguyen. Drs. Pender, Pryor and Kennedy had 18, 19, and 20 years' experience, respectively.

6. Dr. Kennedy had been employed as an anesthesiologist at the VA the longest and, as a result of his longevity, he had the highest base pay, $125,359.

7. The total pay for each of the five anesthesiologists was very close, with just $5,000 difference between newly hired Dr. Algotani and Dr. Kennedy.

8. Dr. Kennedy's total pay was the highest.

9. Kennedy's market pay component was the lowest of the 5 physicians.

Def.'s Mem. 3–4.[6]

Having reviewed the pay documents he received from his FOIA request, Plaintiff takes the position that there exists an "inverse relation between age and market pay and a pattern of discrimination based on age in the determination of market pay for staff anesthesiologists employed at the [Dorn VA]." Pl.'s Mem. 11, ECF No. 41.

In seeking summary judgment and in opposing Plaintiff's motion for summary judgment Defendant explains and defends the Secretary's policies implementing the Pay Act, indicating those policies comply with statutory mandate and are applied nationwide, including at Dorn VA where Plaintiff is a staff anesthesiologist. See Def.'s Mem. 9–11, ECF No. 38-1.

---

[6] Plaintiff does not take exception to these facts as set out by Defendant. This Report includes these to summarize information from the provided chart. By no means does the inclusion of these undisputed facts suggest they are the "most important" facts presented.

Defendant explains that, as required by the Pay Act, the Secretary consults national surveys of physician pay in determining the annual pay ranges—the minimum and maximum levels of annual pay. For example, five national surveys were consulted in determining the ranges in September 2014. VA Handbook 5007/21 at VA_819, ECF No. 38-4; *see* Tamara Nichols Dep. 52, ECF No. 38-6. The policies used to establish the minimum and maximum salary ranges for physicians, explained by Defendant at ECF No. 38-1 at 9-11, are not challenged by Plaintiff. *See* Pl.'s Resp. Mem. 3–4. *Rather, Plaintiff's challenge—and the heart of this litigation—concerns the undisputed "arithmetic" method of arriving at physicians' market pay.*

Defendant explains that the amount of the market-pay component of Plaintiff's total pay is determined after Dorn VA management had determined the applicable pay ranges. When considering where physicians (such as Plaintiff) fall within the applicable salary ranges, "compensation panels" are convened to recommend each physician's annual pay. VA Handbook 5007/21 at VA_814, ECF No. 38-4. Plaintiff's 2014 Compensation Panel included three physicians and an HR advisor. Compensation Panel Action, ECF No. 87-5. On April 4, 2014, Dorn VA Director approved Plaintiff's compensation of $122,060 base pay plus $167,738 market pay, for a total annual rate of $289,798. *Id.* at 4–5.

In early 2015 Plaintiff approached Bernard DeKoning, M.D., Chief of Staff, with concerns about compensation, particularly his market pay. DeKoning Dep. 37–38, ECF No. 38-8. Dr. DeKoning consulted with HR, and it was determined that compensation panels would be convened for Plaintiff and other staff anesthesiologists. *Id.* at 38, 79–80. The reconvened panel did not change the compensation for Plaintiff, Compensation Panel Action 1–3, or other anesthesiologists, *see* Nichols Dep. 47.

It is undisputed that pay is determined by setting the appropriate range, determining what a specific physician's salary should be with the range, and subtracting out the base/longevity pay to obtain the amount considered "market pay." *See* Def.'s Mem. 12 (citing DeKoning and Nichols Deps.); *see also* Pl.'s Mem. 14 (citing, e.g., excerpts of the depositions of Plaintiff, DeKoning, B. James McCallum, M.D.; William J. Groh, M.D.; and Kurt Fichtner, M.D., available at ECF Nos. 41-4, -6, -8, -11, and -12).[7]

Defendant further explains that this arithmetic method of determining market pay is used by the VA nationwide. Def.'s Mem. 12. In deposition, Debra Doty, the Senior Policy Advisor for Title 38 Physician Compensation at the Veterans Administration Central Office in Virginia, confirmed this is the method used nationwide to determine market pay. Doty testified, "[W]e don't consider just market pay. We consider base and longevity and market pay which equals that total annual salary which is what is recommended by comp panels and what is approved by facility directors." Doty Dep. 50, ECF No. 38-9. In response to questions from Plaintiff's counsel, Doty agreed that "market pay is just an arithmetic function of the annual pay minus the base pay equals the market pay[.]" Doty Dep. 54–55, ECF No. 41-13.

III. Analysis

A. ADEA disparate-impact claim

Plaintiff takes the position that this method of arriving at physicians' market pay is improper because it does not consider the factors set out in § 7431(c)(5). Plaintiff submits that this national practice is noncompliant with the Pay Act, claiming that "there is no dispute that

---

[7] Plaintiff has proffered evidence, including deposition testimony from several physicians and HR representatives concerning compensation panels and how market pay was determined. *See* Pl.'s Mem. 13–23 and exhs. A–T; ECF Nos. 41 and 41-1 through 41-20. The undersigned has reviewed Plaintiff's evidence; however, as the method used to determine the market-pay component of the salary of Plaintiff and other anesthesiologists is not contested factually, the undersigned need not comprehensively catalog that evidence herein.

Defendant failed to comply with the statutory mandate governing determination of physician market pay." Pl.'s Opp'n Mem. 5, ECF No. 47. Plaintiff argues that Defendant's alleged failure to properly effect the calculation of market pay has had a disparate impact on Plaintiff and other older Dorn VA anesthesiologists in violation of the ADEA. *See* Pl.'s Mem. 31, ECF No. 41. Plaintiff submits he has provided "statistically significant evidence showing [Dorn VA] determined market pay in an inverse relation to age of its staff anesthesiologists." *Id.* (citing "in particular," exs. O and P, available at ECF Nos. 41-15 and 41-16).

1. **Does sovereign immunity bar Plaintiff's disparate-impact claim brought under the federal-sector ADEA?**

Defendant makes several alternative arguments regarding Plaintiff's disparate-impact ADEA claim. Disparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another. *Teamsters v. United States,* 431 U.S. 324, 335–36, n.15 (1977). Disparate-impact claims do not require a showing that the employer acted with a discriminatory intent. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988).

Both parties agree the issue of whether the federal-sector ADEA permits a disparate-impact claim is an issue about which circuits are split and there is no guidance from the Supreme Court, the Fourth Circuit Court of Appeals, or any court within this District. *See* Pl.'s Reply 1, ECF No. 51 ("The specific issue this Court must decide, in the face of unsettled law, is whether a federal employee's claim of discrimination in compensation in violation of the ADEA is actionable under a disparate-impact theory of proof."); *id.* at 2 (noting no court has considered whether a disparate-impact ADEA claim is available to a federal-sector employee alleging compensation discrimination); Def.'s Reply 1, ECF No. 52 (noting whether sovereign immunity bars disparate-impact ADEA claim or, alternatively, whether federal-sector employer may assert

a "reasonable factor other than age," or "RFOA" defense[8] to such a claim as a "developing area of the law"). The court considers this issue first.

The federal government is deemed to have consented to suit only when it has expressly waived its sovereign immunity. Such waivers must be "'unequivocally expressed in statutory text' and 'will be strictly construed, in terms of scope, in favor of the sovereign.'" *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996) (finding federal-sector provision waived immunity as to retaliation claims based on complaints of age discrimination)). The party who brings suit against the United States or its agents bears the burden of establishing "an unequivocal waiver of [sovereign] immunity." *William v. United States,* 50 F.3d 299, 304 (4th Cir. 1995).

a. Defendant's argument:

Contrasting the federal-sector provision of the ADEA, 29 U.S.C. § 633a, with the private-sector provision, 29 U.S.C. § 623(a), Defendant argues a disparate-impact claim is unavailable because the federal-sector provision is narrowly tailored and should not be interpreted to suggest Congress waived sovereign immunity as to disparate-impact claims. *See* Def.'s Resp. Mem. 9–14, ECF No. 48. As explained by Defendant, the federal-sector provision contains one paragraph concerning proscribed conduct, whereas the private-sector analog contains three:

---

[8] Found in the private-sector portion of the ADEA, the ADEA's reasonable-factor-other-than-age (RFOA) provision permits an employer to take an otherwise prohibited action when "the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). "In other words, if an employer makes a decision based on a reasonable factor other than age, it cannot be said to have made a decision on the basis of an employee's age." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2521 (2015) (referencing the ADEA in its analysis of an FHA claim).

**Private-Sector Provision**
**29 U.S.C. § 623**

**(a) Employer Practices**
It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge
any individual or otherwise discriminate
against any individual with respect to
his compensation, terms, conditions, or
privileges of employment, because of such
individual's age;
(2) to limit, segregate, or classify his
employees in any way which would deprive
or tend to deprive any individual of
employment opportunities or otherwise
adversely affect his status as an employee,
because of such individual's age; or
(3) to reduce the wage rate of any employee
in order to comply with this chapter.

      \* \* \*

**(f) Lawful practices; age an occupational**
**qualification; other reasonable factors; laws**
**of foreign workplace; seniority system;**
**employee benefit plans; discharge or**
**discipline for good cause**
It shall not be unlawful for an employer,
employment agency, or labor organization--
**(1)** to take any action otherwise prohibited
under subsections (a), (b), (c), or (e) of this
section where age is a bona fide occupational
qualification reasonably necessary to the
normal operation of the particular business, *or*
*where the differentiation is based on*
*reasonable factors other than age*, or where
such practices involve an employee in a
workplace in a foreign country, and
compliance with such subsections would cause
such employer, or a corporation controlled by

**Public-Sector Provision**
**29 U.S.C. § 633a**

**(a) Federal agencies affected**
All personnel actions affecting employees or
applicants for employment who are at least
40 years of age . . . shall be made free from
*any discrimination based on age*.
\* \* \*
**(c) Civil actions; jurisdiction; relief**
Any person aggrieved may bring a civil action
in any Federal district court of competent
jurisdiction for such legal or equitable relief as
will effectuate the purposes of this chapter.
\* \* \*
**(f) Applicability of statutory provisions to**
**personnel action of Federal departments,**
**etc.**
Any personnel action of any department,
agency, or other entity referred to in subsection
(a) of this section shall not be subject to, or
affected by, any provision of this chapter, other
than the provisions of sections 626(d)(3) and
631(b) of this title and the provisions of this
section.

such employer, to violate the laws of the
country in which such workplace is located;
　　　＊ ＊ ＊
29 U.S.C. § 623 (italicized emphases added).

Defendant argues Congress did not waive the federal government's sovereign immunity
for ADEA disparate-impact claims. When Congress amended the ADEA to include federal-
sector employees, it set out a separate and distinct proviso to be applicable to age-related claims
by federal employees, "deliberately prescrib[ing] a distinct statutory scheme applicable only to
the federal sector." *Lehman*, 453 U.S. at 166–67. Defendant submits the language of 29 U.S.C. §
633a(f) further demonstrates the separate nature of the ADEA as applied to the federal
government. Def.'s Mem. 9–10. Subsection (f) of § 633a provides that § 633a "shall not be
subject to, or affected by, any provision of this chapter, other than the provisions of sections
626(d)(3) and 631(b) of this title and the provisions of this section." 29 U.S.C. § 633a(f). Section
626(d)(3) was added as a part of the Lilly Ledbetter Act of 2009 and relates to compensation. *See*
Lilly Ledbetter Fair Pay Act of 2009. PL 111-2, Jan. 29, 2009, 123 Stat 5. Section 631(b)
provides that § 633a applies to individuals who are "at least 40 years of age," 29 U.S.C.A. § 631,
and is not at issue here.

Defendant focuses on the federal-sector proviso requiring that personnel actions "be free
from discrimination based on age." 29 U.S.C. § 633a. *See* Def.'s Opp'n 10–11. According to
Defendant, "based on age," by its very terms, is more appropriately construed as applying to
intentional age discrimination (disparate treatment) and not to facially neutral practices that have
an unintended impact on older workers (disparate impact). *See Irwin v. Dep't of Veterans Affairs*,
498 U.S. 89, 95 (1990) (waivers of sovereign immunity "cannot be implied but must be
unequivocally expressed"). Citing several cases from district courts in the District of Columbia,
Defendant argues the federal-sector provision does not permit disparate-impact claims. *See, e.g.,*

*Anderson v. Duncan*, 20 F. Supp. 3d 42, 64 (D.D.C. 2013) (finding the ADEA does not permit claims of age-based disparate impact against the United States); *Allovio v. Holder*, 923 F. Supp. 2d 151, 158 (D.D.C. 2013); *Allard v. Holder*, 840 F. Supp. 2d 269, 280 (D.D.C. 2012) (finding "the federal section's language is simple and plain, and neither expressly nor impliedly authorizes disparate-impact claims.").

While the Supreme Court has not considered whether disparate-impact claims may be brought under the federal-sector ADEA provision, in 2005 the Court recognized the availability of disparate impact under the private-sector provision of the ADEA. *Smith v. City of Jackson*, 544 U.S. 228 (2005) (plurality opinion). The *Smith* Court looked to similarities between the private-sector ADEA and Title VII in finding disparate-impact private-sector ADEA claims to be available. *See* 544 U.S. at 233–39 (noting linguistic similarities between Title VII and ADEA and applying reasoning from seminal case permitting disparate-impact Title VII claims, *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)). The Court noted that the "scope of disparate-impact liability under ADEA is narrower than under Title VII," in part because the private-sector provision contains the RFOA defense. 544 U.S. at 238–40.[9]

Defendant submits the *Smith* Court's reasoning "suggests" that disparate-impact ADEA claims are not available under the federal-sector ADEA. Def.'s Opp'n Mem. 11-12, ECF No. 48. One of the cases Defendant highlights is *Anderson v. Duncan*, 20 F. Supp. 3d 42 (D.D.C. 2013), in which the court found that "disparate impact claims are not cognizable under the ADEA federal-sector provision." *Id.* at 62. Central to the *Anderson* court's analysis was that the federal-sector provision contains no RFOA defense or other defense the federal government can raise.

---

[9] The *Smith* plurality opinion reasoned that the RFOA defense is more necessary for a disparate-impact claim because "the allegedly 'otherwise prohibited' activity is not based on age." 544 U.S. at 238–40. The RFOA defense works to "preclude[e] liability if the adverse impact was attributable to a nonage factor that was 'reasonable.'" *Id.*

*Id*. "Applied in the instant matter, the logic of [*Smith*] dictates that this Court find that disparate impact claims are not cognizable under the ADEA federal-sector provision." 20 F. Supp. 3d at 62. The court compared the private-sector ADEA, which includes a statutory RFOA defense for private employers, with the stand-alone federal-sector provision, which contains no available statutory defense. "[T]he only statutory defenses available to the federal government are those set forth in the ADEA federal-sector provision. In other words, none." *Id*. The *Anderson* decision found "[t]he absence of an RFOA affirmative defense, or any other statutory defense for the federal government, undercuts the[] argument that the government can be *per se* liable for the disparate impact of neutral, non-discriminatory policy decisions." *Id*. "To find that Congress waived federal sovereign immunity here would require the Court to accept a bizarre premise: Congress subjected the United States to a theory of liability for which private employers, but not the federal government, enjoy a statutory affirmative defense, but failed to express its intent explicitly." *Id*. at 63. The *Anderson* court thus concluded that "the ADEA does not permit claims of age-based disparate impact against the United States. *Id*. at 64.

Defendant urges the court to follow the reasoning of the *Anderson* court and other courts that have found sovereign immunity bars an ADEA disparate-impact cause of action in the federal-sector setting. Absent such a ruling, Defendant presents several additional arguments, which are discussed below.

### b. Plaintiff's argument

Noting the flux regarding the issue, Plaintiff submits immunity has been waived for disparate-impact claims against federal employers. Plaintiff supports his argument with the following detailed parenthetical that references several other cases in which courts found sovereign immunity did not bar a federal-sector disparate-impact claim:

> *Compare, e.g., Palmer v. United States*, 794 F.2d 534, 536 (9th Cir. 1986) (interpreting the ADEA as authorizing recovery on a "disparate-impact" theory against a federal employer), *cited in Smith v. City of Jackson*, 434 U.S. 228, 236-37 and n. 8 (2005), *and K.H. v. Secr. of Dep't of Homeland Security*, 2015 WL 7251952 (N.D. Cal. 2015) (the statutory text does not limit the theory of proof upon which a federal employee may base a claim for age discrimination), *and Breen v. Peters*, 474 F. Supp. 2d 1, 8 (D.D.C. 2007) (the federal-sector provision expressly waives sovereign immunity as to age discrimination claims without limiting the theory of discrimination) (relying on *Lagerstrom v. Mineta*, 408 F. Supp. 2d 1207 (D. Kan. 2006)), *with Anderson v. Duncan*, 20 F. Supp. 3d 42, 58, 62 (D.D.C. 2013) (holding plaintiff's disparate-impact claim is not cognizable against a federal employer, but recognizing that the Ninth and Tenth Circuits have "entertained claims of disparate impact against federal employers.").

Pl.'s Reply 2–3.

Plaintiff specifically discusses and distinguishes the *Anderson* case on which Defendant relies in large measure, noting that it did not concern compensation-related claims. Plaintiff argues that both the language of § 633a(f), which specifically refers to a compensation-related portion of the private-sector ADEA, and the EEOC's interpretation of the federal-sector ADEA provision require that the court find no sovereign immunity bar. *See* Pl.'s Mem. 29–31, ECF No. 41; Pl.'s Reply 1–11, ECF No. 41.

Section 633a(f) provides:

> Any personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this chapter, *other than the provisions of sections 626(d)(3)* and 631(b) of this title and the provisions of this section.

29 U.S.C. § 633a (emphasis added). Plaintiff looks to the italicized language, characterizing it as the "federal-sector provision specifically incorporat[ing] the private-sector provisions of the ADEA governing discrimination in compensation, that is § 626(d)(3)." Pl.'s Mem. 30. Section 626(d) provides as follows:

> **(d)(1)** No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed--

(**A**) within 180 days after the alleged unlawful practice occurred; or

(**B**) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

(**2**) Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

(**3**) For purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this chapter, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person *is affected by* application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

29 U.S.C. § 626 (emphasis added).

Noting the uncertainty in this area of the law, Plaintiff indicates no court has considered whether a federal-sector ADEA disparate-impact claim could be brought when, as here, it relates to compensation.[10] Plaintiff argues, though, that § 626(d)(3) is important to this matter and uses that section to distinguish *Anderson*. Plaintiff focuses on the language of § 626(d)(3), arguing § 626(d)(3) is an enforcement statute that is directed to "the consequences of compensation practices, and not simply to the employer's motivation." Pl.'s Reply 4 (looking to the "affected by" language of the statute). Plaintiff also argues the express language of the federal-sector provision is broad enough to encompass disparate-impact claims because it is directed to "[a]ll personnel actions ***affecting*** employees," mandating that those personnel actions "shall be made free from ***any*** discrimination based on age." 29 U.S.C. § 633a(a) (emphases added by Plaintiff).

---

[10] Having undertaken independent research, the undersigned agrees with Plaintiff that neither *Anderson* nor other cases relied on by the parties consider compensation-related disparate-impact claims brought under the federal-sector ADEA.

Plaintiff also relies on the decision of *Breen v. Peters*, 474 F. Supp. 2d 1 (D.D.C. 2007), in which the district court agreed that the broad language of § 633a(a) "does not limit or qualify the type of age discrimination that Congress prohibited for federal employers, or limit the theory or proof upon which a plaintiff may base a claim that a federal employer violated § 633a(a)." 474 F. Supp. 3d at 6. Rather, the *Breen* court noted, the federal-sector section's language extends the prohibition to "*any* discrimination based on age." *Id.* (emphasis in original). In *Breen*, the court noted that, although disparate-treatment and -impact claims use differing methods of proof, the "ultimate legal issue" is not different. *Id. See also Lagerstrom v. Mineta*, 408 F. Supp. 2d 1207, 1210–12 (D. Kan. 2006) (considering legislative history of the ADEA's federal-sector provision and finding sovereign immunity waived for all age-discrimination claims, regardless of whether proved through disparate-treatment or disparate-impact theories and proof).

Further, Plaintiff argues the Court's holding in *Smith*, while focused on private-sector ADEA claims, supports Plaintiff's argument that disparate-impact claims may be brought in federal-sector matters. The *Smith* Court looked to the language of the statute at issue and noted it was directed to actions that *affect* employees and did not focus on the employer's motivation or intent (as for disparate-treatment claims), but focused on the impact on the employee (as in disparate-impact claims). *Smith*, 544 U.S. at 235. *See* Pl.'s Reply 7.

Plaintiff also notes the *Smith* Court's consideration of the EEOC's interpretation of the private-sector ADEA as allowing disparate-impact claims. *See* 544 U.S. at 243–44 (finding case an appropriate one in which to defer to agency interpretation). To that point, Plaintiff provides an EEOC informal discussion letter in which the EEOC indicates it interprets the federal-sector ADEA to permit disparate-impact claims. The EEOC's Informal Discussion Letter states in part:

> In its administrative decisions involving claims of discrimination against federal government agencies, **the EEOC has long held that disparate impact claims are available under § 633a**, *see, e.g., Carpenter v. Peters*, EEOC Appeal Nos. 0120065151, *et al.* (Sept. 20, 2005) (reversing agency dismissal where complainants adequately alleged disparate impact under the ADEA); *Witkowsky v. Department of the Interior*, EEOC Petition No. 03970122 (Jan. 30, 1998) (finding no disparate impact where the complainant failed to identify an alternative practice that would accomplish a similar result with less impact on older workers). The Commission's position is consistent with the Supreme Court's broad reading of § 633a(a) in another context. *See Gomez-Perez v. Potter*, 553 U.S. 474, 487 (2008) (inferring a cause of action for retaliation in the federal sector and describing § 633a as a "broad prohibition of 'discrimination,' rather than a list of specific prohibited practices.").

EEOC Informal Discussion Letter, "ADEA: Disparate Impact & RFOA in the Federal Sector," (Oct. 6, 2010), *available at*: https://www.eeoc.gov/eeoc/foia/letters/ 2010/adea_age_impact_rfoa.html (last visited Dec. 21, 2016) (emphasis added).[11] The Informal Discussion Letter noted there was an open issue of whether the reasonable-factor-other-than-age defense should be applicable to such claims, but declined to offer guidance on that issue. *See* Pl.'s Reply 10.

### 2. **Recommended Outcome as to Sovereign Immunity Claim**

The undersigned has reviewed the authorities and arguments of both parties and conducted independent research as to this question of apparent first-impression in the Fourth Circuit. The undersigned finds this to be a close call and acknowledges that cogent legal arguments exist to support Defendant's argument that sovereign immunity has not been waived as to disparate-impact ADEA claims. *See, e.g., Anderson*, 20 F. Supp. 3d at 58–64. Nonetheless, the undersigned is of the opinion that the more compelling argument is that sovereign immunity

---

[11] The EEOC's Informal Letter is prefaced with the statement that it is an "informal discussion" and "does not constitute an official opinion of the Commission." The Letter's author declined to respond to the portion of the query that asked whether the RFOA defense would be available in claims brought under the federal-sector ADEA. EEOC Informal Discussion Letter, "ADEA: Disparate Impact & RFOA in the Federal Sector," (Oct. 6, 2010), *available at*: https://www.eeoc.gov/eeoc/foia/letters/ 2010/adea_age_impact_rfoa.html

has been waived as to disparate-impact claims under the federal-sector ADEA. Important to this analysis is the language of § 633a itself, the Supreme Court's analysis in *Smith* when determining disparate-impact theories of relief are available under the private-sector ADEA, the Court's broad construction of § 633a in determining the federal-sector provision provides for a retaliation cause of action, *Gomez-Perez*, 553 U.S. at 487, and the EEOC's position that disparate-impact claims are available in the federal sector.

Determining whether immunity has been expressly waived begins with considering the language of the statute itself. *See Breen*, 474 F. Supp. 2d at 6. "Where the statute's language is plain, a court is bound to "'enforce it according to its terms.'" *Id. (*quoting *United States v. Ron Pair Enterprises,* 489 U.S. 235, 241 (1989) (internal quotation omitted)). As explained by the *Breen* court,

> The prohibition for federal employers is simple and sweeping: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The statutory text does not limit or qualify the type of age discrimination that Congress prohibited for federal employers, or limit the theory or proof upon which a plaintiff may base a claim that a federal employer violated § 633a(a). To the contrary, the prohibition extends expressly to "**any** discrimination based on age." *Id.*

*Breen*, 474 F. Supp. 2d at 6 (emphasis added in *Breen*).

Defendant submits that the language "based on age," is "most naturally construed to prohibit intentional age discrimination (disparate treatment claims)," Def.'s Mem. 10, ECF No. 48, thus waiving immunity for disparate-treatment claims only. However, as noted in *Breen*, the statutory language does not reference "disparate treatment" or use the word "intentional." 474 F. Supp. 2d at 6. Further, disparate treatment and disparate impact are but different methods of proving what is forbidden: "any discrimination based on age." The undersigned recommends

denying Defendant's Motion for Summary Judgment on the ground that sovereign immunity bars

Plaintiff's disparate-impact ADEA claim.[12]

### 3. Analysis of Plaintiff's Disparate-Impact Claim

As noted above, disparate-impact claims involve employment practices that are facially

neutral in their treatment of different groups but in fact fall more harshly on one group than

another. *Teamsters v. United States,* 431 U.S. 324. Disparate-impact claims do not require a

showing that the employer acted with a discriminatory intent. *Watson v. Fort Worth Bank &*

*Trust*, 487 U.S. 977, 986 (1988). Both parties seem to agree on the following formulation of a

prima facie disparate-impact case, and that it is Plaintiff's burden to establish a prima facie case.

*See* Pl.'s Mem. 31, Def.'s Mem. 14.

> A *prima facie* case of disparate impact requires the identification of a specific
> employment practice that, while facially neutral, nonetheless had a
> disproportionate adverse effect on a protected class of individuals, and a
> demonstration of causation through "statistical evidence of a kind and degree
> sufficient to show that the practice in question . . . caused" individuals to suffer
> the offending adverse impact "because of their membership in a protected group."

*Anderson*, 20 F. Supp. 3d at 54 (quoting 487 U.S. at 994) (omission in original).

---

[12] Based on this recommended ruling, the undersigned does not consider in depth the portion of
Plaintiff argument arguing that immunity is waived as to disparate-impact claims based on the
language of 29 U.S.C. § 626(d)(3). *See* Pl.'s Reply 4–5. While there is no question that the
federal-sector ADEA now expressly includes § 626(d)(3)—a section relating to compensation
discrimination—it does not automatically follow that such a section adds any additional
*substantive* avenue of relief. Rather, § 626(d)(3) was created as a part of the Lilly Ledbetter Act,
and reference to § 626(d)(3)—section 7(d)(3) of the Lilly Ledbetter Act—was added to § 633a(f)
of the ADEA at the same time. *See* Lilly Ledbetter Fair Pay Act of 2009. PL 111-2, Jan. 29,
2009, 123 Stat 5. Rather than create new substantive causes of action, the Lilly Ledbetter Act
clarified limitations issues as to compensation claims by setting out when an unlawful practice is
considered to have "occurred." *Rodriguez–Torres v. Gov't Dev. Bank of Puerto Rico*, 704 F.
Supp. 2d 81, 96 n.6 (D.P.R. 2010) (holding "the [Ledbetter] Act does not create substantive
rights, but instead clarifies the point of commencement of the statute of limitations in instances
of wage discrimination"); *Jones v. Richland Cnty.*, No. CV 3:16-0466-MBS-KDW, 2016 WL
5402862, at *2 (D.S.C. Sept. 28, 2016) (adopting recommendation); *Davis v. S.C. Dep't. of
Health and Envtl. Control*, Civil Action No. 3:13-cv-2612-JMC, 2015 WL 5616237, *1 n.1
(D.S.C. Sept. 24, 2015).

Here, Plaintiff frames the issue as looking only to his *market pay*—arguing Defendant's current method of calculating that aspect of his pay results in discrimination on account of his age. Plaintiff sets out the ages, years, of experience, base pay, market pay, and total pay of all Dorn VA anesthesiologists, claiming this provides "statistically significant evidence showing the [Dorn VA] determined market pay in an inverse relation to age of its staff anesthesiologists." Pl.'s Mem. 31 (citing to exs. O and P, available at 41-15 and 41-16).

Defendant, though, focuses on the total pay calculations, noting the undisputed fact that Plaintiff's total pay is the highest of all of the anesthesiologists in the group as to which he presents evidence. *See* Def.'s Mem. 1. Defendant acknowledges the five factors to be considered in setting market pay, but argues such considerations do not "abnegate[] both the statutory provisions establishing the annual pay tiers as well as" the requirements of the Pay Act concerning the minimum and maximum amounts of total annual pay that physicians may receive. Def.'s Resp. 5, ECF No. 48.

Plaintiff objects to Defendant's discussion of the broader issue of total pay, arguing that neither "total pay" nor "annual pay" is material to the "issue at hand, which is the [Dorn VA's] failure to apply the statutory procedure and criteria in determining market pay." Pl.'s Opp'n 2–3. The undersigned disagrees with Plaintiff. Plaintiff simply cannot instruct the court to consider only one element of the three-element pay system created by the Pay Act. *See* 38 U.S.C. § 7431. Rather, the court must consider the arguments of both Plaintiff and Defendant, which consideration includes review of the entire Pay Act, as well as the other statutes referenced by both Plaintiff and Defendant in their arguments. *See generally* 2A Sutherland Statutory Construction § 46:5 (7th ed.) ("A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be

construed in connection with every other part or section to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be construed." (footnotes omitted)); c*f. PSINet, Inc. v. Chapman*, 362 F.3d 227, 232 (4th Cir. 2004) (noting all parts of a statute are to be construed as having meaning).

This difference in framing the issue as being about market pay (as Plaintiff urges) or about total pay (as Defendant urges) begs the court's consideration, at this juncture, of one issue: whether there can be an "adverse impact" for ADEA purposes related only to the market-pay component of Plaintiff's pay. If Plaintiff has not demonstrated that he suffered an adverse employment action, his disparate-impact ADEA claim fails. *See Watson*, 487 U.S. at 994 (in private-sector context noting after a plaintiff identifies a specific employment practice at issue he or she must also sufficiently specify statistical evidence showing the practice in question caused the adverse action).

> *An adverse employment action is a necessary element of a discrimination claim under either the ADEA or Title VII, regardless of whether the plaintiff relies on a disparate treatment or disparate impact theory. See, e.g., Aliotta v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010) (under the ADEA, an adverse employment action is required under both disparate treatment and disparate impact theories of discrimination); *Young v. Covington & Burling LLP*, 740 F. Supp. 2d 17, 21 (D.D.C. 2010) (summarizing case law indicating that, in the context of Title VII litigation under both disparate treatment and disparate impact theories, "the constitutional requirement of an injury in fact is construed as an adverse employment action") (internal citations and quotation marks omitted).

*Tresvant v. Oliver*, No. CIV. A. DKC 12-0406, 2013 WL 598333, at *4 n.3 (D. Md. Feb. 15, 2013) (emphasis added).

While not referenced directly by either party, Section (g) of the Pay Act indicates Plaintiff's laser focus on only market pay does not support an ADEA claim:

> **(g) Ancillary effects of decreases in pay.--(1)** A decrease in pay of a physician or dentist resulting from an adjustment in the amount of market pay of the

physician or dentist under subsection (c) **shall not be treated as an adverse action**.

38 U.S.C. § 7431(g) (emphasis added).[13] Here, Plaintiff focuses on his argument that the market-pay component of his total pay was not calculated using the correct criteria. If the correct criteria had been used, Plaintiff argues that he "should have been awarded the highest market pay among his colleagues or, at the very least, market pay equal to the highest awarded to junior staff anesthesiologists for the same periods." Pl.'s Mem. 6. Had Plaintiff received the "least" amount of market pay he claims he should receive for 2014, for example, his total 2014 pay would be increased by $22,775 (the difference between his $167,738 2014 market pay and $190,513, the highest 2014 market pay listed). *See* ECF No. 48-6.

Plaintiff's complaint, then, is effectively about a decrease in his pay. In the very statute setting out how his pay is to be determined, Congress included a directive that an "adjustment in the amount of market pay" that results in a pay decrease "shall not be treated as an adverse action." § 7431(g). Here, Congress included specifics regarding consideration for market pay, to be sure. However, Congress also specifically found that an adjustment to market pay would not create an "adverse employment action." § 7431(g). Plaintiff's comparison of his market pay to the market pay of others, then, is not properly considered to be an adverse action under the ADEA. Plaintiff cannot establish his prima facie ADEA disparate impact claim, making summary judgment for Defendant appropriate.

### 4. Alternative ADEA analysis

In the event the statistics provided by Plaintiff are considered further, summary judgment as to Plaintiff's ADEA claim remains appropriate. Assuming, *arguendo*, that Plaintiff's narrow

---

[13] Although Defendant did not focus on subsection (g) of the Pay Act, he argues Plaintiff has not established a prima facie ADEA claim, which includes a showing of an adverse action. *See, e.g.*, Def.'s Mem. 14, ECF No. 38-1.

focus on the allegedly improper manner in which Defendant calculates the market-pay component of physicians' pay suffices as having identified a facially neutral "specific employment practice" that has a disproportionate adverse effect on "members of a protected group," Plaintiff must provide evidence of "statistical disparities [that are] sufficiently substantial" to raise an "inference of causation." *Watson,* 487 U.S. at 995. This he has not done.

Plaintiff has not provided sufficient statistical evidence to establish that the practice in question caused a disparate impact on himself and his group of protected individuals—defined here as other anesthesiologists at the Dorn VA. The evidence Plaintiff has provided is a compilation of the names, years of experience, years of age, market pay, and total pay for himself and the four other Dorn VA anesthesiologists. *See* Pl.'s Opp'n Mem. 6, ECF No. 47. Plaintiff submits that the years of experience in the field of anesthesiology and the years of VA experience "are the only criteria that vary among" the Dorn VA anesthesiologists. Because Plaintiff has the most combined experience but the lowest market pay, Plaintiff claims "this statistical data proves that the discrepancy in market pay experienced by [Plaintiff] was on account of his age." *Id.* Plaintiff submits that this statistical evidence "exposes a near perfect inverse relation between the amount of market pay awarded to staff anesthesiologists and their age." *Id.* at 7.

The ADEA exists to stem discrimination "because of age." § 633a(a). The undersigned is of the opinion that Plaintiff's evidence of a "near perfect inverse relation" between age and market pay is insufficient to provide the requisite causation Plaintiff needs to prevail on his disparate-impact claim. Neither the court nor Defendant is to assume Plaintiff's statistical evidence is reliable. 487 U.S. at 996. Weaknesses to be considered are "small or incomplete data sets and inadequate statistical techniques." 487 U.S. at 996–97.

Plaintiff has provided no more than a list of names and numbers. If considered to be statistics, Plaintiff's sample size is quite small—himself and four others. At that size, the undersigned is not persuaded that this "near perfect inverse relation" between age and market pay is sufficient to demonstrate causation. It is true that Plaintiff (born in 1951) is the oldest of the five and that he received the lowest market pay in 2014: $167,738. The amount of market pay does not continue downward in a precise inverse relationship to age, however. The youngest anesthesiologist listed, Dr. Alghothani (born in 1966) received $189,533 in market pay for 2014. Dr. Nguyen (born in 1962) is older that Dr. Alghothani but received *more* market pay: $190,513. One-of-five (or 20%) of Plaintiff's proffered list of statistical proof of causation does not bear out his argument of a disparate-impact based on age.

Further, all of those on Plaintiff's list are over the age of 40, which is the age at which the ADEA's protections begin. *Id. See Watson*, 487 U.S. at 994 (noting disparate-impact ADEA claim requires "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their *membership in a protected group*.") (emphasis added). Here, Plaintiff's data relate only to himself and four colleagues, all over the age of 40. Plaintiff has provided no information regarding anesthesiologists or other physicians at the Dorn VA or anywhere in the VA hospital system. The undersigned recommends a finding that Plaintiff has not provided sufficient statistical evidence to supply the causation element of his prima facie ADEA claim. Summary judgment for Defendant on Plaintiff's ADEA cause of action is appropriate.

The undersigned further notes that the VA's "arithmetic" calculation of market pay for Plaintiff is the same system used nationwide. *See* Doty Dep. 7. The Pay Act's factors to be considered in establishing the market-pay component of physicians' total pay includes the

directive that the Secretary is to "take into account . . . (f) such other considerations as the Secretary considers appropriate." 38 U.S.C. § 7431(c)(5)(f). Further, Defendant also notes it must consider all of the Pay Act's directives, including the focus on developing and following specific pay tiers for physicians. Def.'s Opp'n 5.[14]

### 5. RFOA alternative ruling

Based on the above analysis, the undersigned need not offer a ruling on the unsettled issue of whether the RFOA defense is available to Defendant in this matter. *See* Def.'s Reply 1, Pl.'s Reply 11 (acknowledging whether the RFOA defense would be available to a federal-sector ADEA claim is an unsettled question); *Smith*, 544 U.S. at 238 (the RFOA defense excepts from private-sector ADEA liability any discriminatory action in which "the differentiation is based on reasonable factors other than age[.]'") (quoting 81 Stat. 603). In the event the RFOA defense is available to Defendant in this matter, the undersigned is of the opinion that Defendant has established such a defense, making summary judgment appropriate. The "reasonable factors other than age" identified by Defendant are the "Secretary's need to attract and retain highly qualified physicians" and the "Dorn VA's desire to comply with the Veterans Administration's established policies." Def.'s Opp'n 18–19. Plaintiff counters that Defendant's practice cannot be "reasonable" because it "violates statutory law." Pl.'s Reply 11–12. For the reasons discussed above, the undersigned is of the opinion Defendant has not "violated statutory law" in calculating the pay of Plaintiff or other Dorn VA anesthesiologists. Accordingly, Defendant has established a reasonable factor other than age for the manner in which it calculates pay, making it entitled to summary judgment as to Plaintiff's ADEA claim.

---

[14] Somewhat ironically, Plaintiff would have the court defer to the EEOC's guidance that a disparate-impact method of proof is available under the federal-sector ADEA, see Pl.'s Reply 9–10, but not defer to the VA's method of determining salaries under the Pay Act.

B. Declaratory Judgment

Plaintiff's only other cause of action seeks the court's declaratory judgment finding Defendant has been noncompliant with the Pay Act in its determination of Plaintiff's compensation. Compl. ¶¶ 42–45. Plaintiff asks that the court then apply the "proper statutory procedure and criteria, for the purpose of recalculating [Plaintiff's] market pay from 2007 through the present," and to award other relief. *Id.* ¶ 45. Although not referenced in the Complaint, Plaintiff's Motion for Summary Judgment indicates he seeks the court's declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides in relevant part:

> **(a)** In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C § 2201. Plaintiff submits he has presented an "actual controversy" concerning his rights under the Pay Act, claiming that "[i]n essence, [he] has been denied the process he was due in having his market pay properly determined." Pl.'s Mem. 28. Plaintiff claims he is entitled to the court's ruling that Defendant was noncompliant with the Pay Act and the court's declaration that Defendant must comply and recalculate his compensation. *Id.* Plaintiff cites *Ketner v. Branch Banking & Trust Co.*, 143 F. Supp. 3d 370, 385 (M.D.N.C. 2015), in support of his request that he may seek declaratory relief both under the ADEA and the Declaratory Judgment Act. Pl.'s Mem. 41.

In its own Motion and in response to Plaintiff's Motion, Defendant argues sovereign immunity bars Plaintiff's request for a declaratory judgment, noting the Declaratory Judgment Act itself does not constitute a waiver of sovereign immunity. Def.'s Mem. 16 (citing several

cases from the Eastern District of Virginia). Defendant argues Plaintiff has not met his burden of demonstrating waiver of immunity for the requested declaratory judgment. Def.'s Opp'n Mem. 8.

In responding to Defendant's Motion and assertion of the sovereign-immunity defense, Plaintiff's again references the Declaratory Judgment Act. Pl.'s Opp'n Mem. 11. Plaintiff also looks to a section of the federal-sector ADEA provision, which provides:

**(c) Civil actions; jurisdiction; relief**

Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter.

29 U.S.C. § 633a. Plaintiff also cites *Newman v. D.C. Courts*, 125 F. Supp. 3d 95, 106–07 (D.D.C. 2015), as "suggest[ing] an employee would be entitled to declaratory relief under the ADEA itself." Pl.'s Opp'n Mem 12–13.

Having considered the arguments in all of the parties' memoranda, the undersigned agrees with Defendant that sovereign immunity has not been waived such that Plaintiff may pursue a separate cause of action seeking a declaratory judgment under the Declaratory Judgment Act.

Sections 2201 and 2202, which create declaratory judgment and other relief based on declaratory judgment as remedies available in actions otherwise within a district court's jurisdiction, do not constitute independent bases for jurisdiction and do not waive sovereign immunity. *See CGM, LLC v. BellSouth Telecomm., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011); *see also Gabriel v. Gen. Servs. Admin.*, 547 F. App'x 829, 831 (9th Cir. 2013).

*South Carolina v. United States*, No. 1:16-CV-00391-JMC, 2016 WL 7191567, at *3 (D.S.C. Oct. 31, 2016). Defendant's Motion for Summary Judgment for Plaintiff's separate second cause

of action should be *granted*; conversely, Plaintiff's Motion for Summary Judgment as to a separate claim brought pursuant to the Declaratory Judgment Act should be *denied*.[15]

III.     Conclusion and Recommendation

For the reasons set forth above, the undersigned recommends Defendant's Motion for Summary Judgment, ECF No. 38, be *granted*; Plaintiff's Motion for Partial Summary Judgment, ECF No. 41, be *denied*; and this matter be ended.

IT IS SO RECOMMENDED.

December 28, 2016                                    Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[15] This suggested ruling notwithstanding, the undersigned agrees with Plaintiff that the remedies the federal-sector ADEA permits include "such legal *or equitable* relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c) (emphasis added). *See* Pl.'s Opp'n Mem. 11. Although Defendant filed a Reply to this memorandum, ECF No. 52, it does not respond to this portion of Plaintiff's argument.