IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Richard M. Kennedy, III, ) | |
| ) | C/A No. 3:15-1844-MBS-KDW |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Robert A. McDonald, in his official ) | |
| capacity as Secretary of the U.S. ) | |
| Department of Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Richard M. Kennedy, III, is a staff anesthesiologist employed at the William Jennings Bryan Dorn VA Medical Center ("Dorn Medical Center") in Columbia, South Carolina. He brings this action against Defendant Robert A. McDonald, as his official capacity as Secretary of the United States Department of Veterans Affairs (the "VA"), alleging discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a (First Cause of Action) and seeking relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 (Second Cause of Action).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West for pretrial handling. On July 1, 2016, Defendant filed a motion for summary judgment, arguing that the VA's method of determining annual pay is consistent with applicable law, that Plaintiff cannot establish disparate impact[1] because

---

[1] Plaintiff also alleged a disparate treatment claim, which was not raised in briefing at this stage. In his reply filed March 13, 2017, Plaintiff states he has received additional information such that he is "no longer abandoning his disparate treatment claim and a ruling thereon would be premature." ECF No. 78.

he has no evidence of any statistical burden on older physicians, and Plaintiff has shown no waiver of sovereign immunity for a declaratory judgment action such as sought herein. Plaintiff filed a cross-motion for partial summary judgment as to the issues of Defendant's liability under the ADEA and Plaintiff's demand for declaratory judgment. Plaintiff filed a response in opposition to Defendant's motion on July 21, 2016, to which Defendant filed a reply on August 1, 2016. Defendant also filed a response in opposition to Plaintiff's motion on July 21, 2016, to which Plaintiff filed a reply on August 1, 2016.

The Magistrate Judge issued a Report and Recommendation on December 28, 2016, in which she recommended that Defendant's motion for summary judgment be granted and Plaintiff's motion for partial summary judgment be denied. Plaintiff filed objections to the Report and Recommendation on February 1, 2017, to which Defendant filed a response on February 21, 2017. Plaintiff filed a reply to Defendant's response on March 13, 2017, to which Defendant filed a surreply on March 28, 2017.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. Id. This court is obligated to conduct a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. Id.

I. FACTS

The facts are fully detailed in the Report and Recommendation. Briefly, Plaintiff is paid pursuant to the provisions of the Pay Act (the Department of Veterans Affairs Health Care Personnel Enhancement Act of 2004), which was enacted to address the disparities in pay between physicians and dentists employed by the VA and those in the private and academic sectors. Pursuant to 38 U.S.C. § 7431, the pay of physicians and dentists in the Veterans Health Administration consists of the following three elements: base pay, market pay, and performance pay. At issue in this litigation is the interaction between base pay and market pay.

Base pay is based upon a longevity pay schedule. For example, a physician or dentist employed by the VA for two years or less is considered to be at step 1; more than 2 years and not more than 4 years, step 2, and so forth. The highest rank a physician or dentist may attain is step 15, after 28 years service with the VA. See § 7431(b)(3). Market pay is "intended to reflect the recruitment and retention needs for the specialty or assignment . . . of a particular physician or dentist" in a VA facility, and is determined on a case-by-case basis. Under § 7431(c)(4),

> The determination of the amount of market pay of a physician or dentist shall take into account--
>
> (A) the level of experience of the physician or dentist in the specialty or assignment of the physician or dentist;
>
> (B) the need for the specialty or assignment of the physician or dentist at the medical facility of the Department concerned;
>
> (C) the health care labor market for the specialty or assignment of the physician or dentist, which may cover any geographic area the Secretary considers appropriate for the specialty or assignment;
>
> (D) the board certifications, if any, of the physician or dentist;

(E) the prior experience, if any, of the physician or dentist as an employee of the Veterans Health Administration; and

(F) such other considerations as the Secretary considers appropriate.

Under § 7431(c)(5), a physician or dentist's market pay is evaluated not less than every twenty-four months, at which time the amount of market pay may be adjusted. Section 7431(c)(6) further provides that no adjustment of the amount of market pay of a physician or dentist under § 7431(c)(5) may result in a reduction of the amount of market pay of the physician or dentist while in the same position or assignment at the same VA facility, unless there is a change in board certification or reduction of privileges.

Annual pay is defined as the sum of the base pay rate and market pay. Under Section 7431(e)(1)(A), every two years "the Secretary shall prescribe for Department-wide applicability the minimum and maximum amounts of annual pay that may be paid under this section to physicians and the minimum and maximum amounts of annual pay that may be paid under this section to dentists." As a general proposition, "the sum of the total amount of the annual rate of base pay payable to a physician or dentist under subsection (b) and the market pay determined for the physician or dentist under subsection (c) may not be less than the minimum amount, nor more than the maximum amount, applicable to specialty or assignment of the physician or dentist under paragraph (1)." Id. § (e)(1)(C)(2).

In setting salaries, a compensation panel at Dorn Medical Center identifies the applicable annual pay range and from that range recommends annual pay for each physician or dentist. See 79 F.R. § 56125-01. The annual pay may be broken down by subtracting the base pay from the annual pay; the remainder is considered to be the market pay.

In December 2014, there were five anesthesiologists employed by Dorn Medical Center: Plaintiff and Drs. Pryor, Pender, Nguyen, and Alghothani. The within claims arose when Plaintiff discovered the market rate portion of his salary was less than that of a new hire. The Magistrate Judge included in her Report and Recommendation the following chart setting out relevant age and pay information:

| VA hire year: | | 1998 | | | 2005 | | | 2011 | | | 2013 | | | 2014 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Birth year: | | 1951 | | | 1954 | | | 1957 | | | 1962 | | | 1966 | | |
| Age at hire: | | 47 | | | 51 | | | 54 | | | 51 | | | 48 | | |
| | | Kennedy | | | Pryor | | | Pender | | | Nguyen | | | Alghothani | | |
| | | | Years of Anes Exp | | | Years of Anes Exp | | | Years of Anes Exp | | | Years of Anes Exp | | | Years of Anes Exp | |
| YEAR | PAY TYPE | PAY $ | Total | VA | PAY $ | Total | VA | PAY $ | Total | VA | PAY $ | Total | VA | PAY $ | Total | VA |
| 2006 | Base | $102,000 | | | $90,000 | | | | | | | | | | | |
| | Market | $156,000 | 11 | 8 | $150,000 | 10 | 1 | | | | | | | | | |
| | Total | $258,000 | | | $240,000 | | | | | | | | | | | |
| 2007 | Base | $106,326 | | | $96,945 | | | | | | | | | | | |
| | Market | $156,000 | 12 | 9 | $150,000 | 11 | 2 | | | | | | | | | |
| | Total | $262,326 | | | $246,945 | | | | | | | | | | | |
| 2008 | Base | $109,453 | | | $96,945 | | | | | | | | | | | |
| | Market | $156,000 | 13 | 10 | $165,055 | 12 | 3 | | | | | | | | | |
| | Total | $265,453 | | | $262,000 | | | | | | | | | | | |
| 2009 | Base | $112,629 | | | $102,975 | | | | | | | | | | | |
| | Market | $156,000 | 14 | 11 | $165,055 | 13 | 4 | | | | | | | | | |
| | Total | $268,629 | | | $268,030 | | | | | | | | | | | |
| 2010 | Base | $117,589 | | | $104,521 | | | | | | | | | | | |
| | Market | $167,738 | 15 | 12 | $176,911 | 14 | 5 | | | | | | | | | |
| | Total | $285,327 | | | $281,432 | | | | | | | | | | | |
| 2011 | Base | $117,589 | | | $104,521 | | | $97,987 | | | | | | | | |
| | Market | $167,738 | 16 | 13 | $176,911 | 15 | 6 | $181,013 | 14 | 0 | | | | | | |
| | Total | $285,327 | | | $284,699 | | | $279,000 | | | | | | | | |
| 2012 | Base | $120,856 | | | $107,788 | | | $97,987 | | | | | | | | |
| | Market | $167,738 | 17 | 14 | $176,911 | 16 | 7 | $181,013 | 15 | 1 | | | | | | |
| | Total | $288,594 | | | $284,699 | | | $279,000 | | | | | | | | |
| 2013 | Base | $120,856 | | | $107,788 | | | $102,266 | | | $97,987 | | | | | |
| | Market | $167,738 | 18 | 15 | $176,911 | 17 | 8 | $187,246 | 16 | 2 | $190,513 | 21 | 0 | | | |
| | Total | $288,594 | | | $284,699 | | | $289,512 | | | $288,500 | | | | | |
| 2014 | Base | $122,060 | | | $111,163 | | | $102,266 | | | $98,967 | | | $98,967 | | |
| | Market | $167,738 | 19 | 16 | $176,911 | 18 | 9 | $187,246 | 17 | 3 | $190,513 | 22 | 1 | $189,533 | 13 | 0 |
| | Total | $289,798 | | | $289,074 | | | $289,512 | | | $289,480 | | | $288,500 | | |

ECF No. 48-6.

As is readily apparent, the base pay component for each anesthesiologist comports with the applicable longevity table "step." However, the annual pay received by all anesthesiologists in this group in 2014 appears to range from a low of $288,500 (Alghothani) to a high of $289,798

5

(Kennedy), a difference of only $1,298. As a consequence, the market rate paid to each anesthesiologist decreases over time. At bottom, Plaintiff asserts that the manner by which Dorn Medical Facility determines market pay, i.e., by simply determining an annual pay amount and then subtracting from that number the base pay, fails to take into consideration the factors set forth in § 7431(c)(4). Plaintiff contends that the methodology results in a disparate impact on him because of his age, in violation of the ADEA. According to Plaintiff, the data reflected in the above-referenced chart "exposes a near perfect inverse relation between the amount of market pay awarded to staff anesthesiologists and their age." ECF No. 47, 7.

## DISCUSSION

The ADEA, as applied to federal employees who are at least forty years of age,[2] prohibits "any discrimination based on age." 29 U.S.C. § 633a. Claims of disparate impact, such as the within action, are premised on the notion that "some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 987 (1988). Disparate impact cases involve employment practices that are facially neutral in their treatment of different groups but in fact fall more harshly on one group than another. . . . Proof of discriminatory motive is not required under a disparate-impact theory." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 325-26 n.15 (1977). Rather,

> A prima facie case of disparate impact requires the identification of a specific employment practice that, while facially neutral, nonetheless had a disproportionate adverse effect on a protected class of individuals, and a demonstration of causation through "statistical evidence of a kind and degree sufficient to show that the practice in question . . . caused" individuals to suffer the offending adverse impact "because

---

[2] Each of the anesthesiologists is over the age of forty.

6

of their membership in a protected group."

Anderson v. Duncan, 20 F. Supp. 3d 42, 54 (D.S.C. 2013) (quoting Watson, 487 U.S. at 994).

In addition, a plaintiff "'must allege a tangible adverse employment action as a result of the alleged discrimination.'" Axel v. Apfel, 171 F. Supp. 2d 522, 526 (D. Md. 2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 523-24 (1993)). Adverse employment actions must consist of "'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.'" Id. (quoting Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981)). Finally, once the allegedly discriminatory practice has been identified, the plaintiff "must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused [the adverse employment action] because of [his] membership in a protected group." Watson, 487 U.S. at 995. Statistical disparities must be sufficiently substantial that they raise such an inference of causation. Id.

When a plaintiff makes out a prima facie case in a *private-sector* ADEA cause of action, § 623(f)(1) exempts "otherwise illegal conduct by reference to a further item of proof, thereby creating a defense for which the burden of persuasion falls on the" defendant. Meacham v. Knolls Atomic Power Lab., 554 U.S. 84, 93 (2008). Section 623(f)(1) provides that it shall not be unlawful for an employer "(1) to take any action otherwise prohibited . . . where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, *or where the differentiation is based on reasonable factors other than age*[.]" (emphasis added). In Meacham, 554 U.S. at 96, the Supreme Court explained that the "reasonable factor other than age" ("RFOA") in the language constitutes an affirmative defense that

>is not focused on the asserted fact that a non-age factor was at work; we assume it

7

> was. The focus of the defense is that the factor relied upon was a "reasonable" one for the employer to be using. Reasonableness is a justification categorically distinct from the factual condition "because of age" and not necessarily correlated with it in any particular way: a reasonable factor may lean more heavily on older workers, as against younger ones, and an unreasonable factor might do just the opposite.

Because § 633a, the *public-sector* ADEA provision, contains no such exemption, it is an open question whether defendants in public-sector cases can assert a RFOA defense.

A.     Report and Recommendation

The Magistrate Judge determined that, viewing Plaintiff's total pay in context of the Pay Act, no disparate impact is apparent because Plaintiff receives the highest annual pay among the five anesthesiologists employed by Dorn Medical Facility. The Magistrate Judge further found that, based on the wording of 38 U.S.C. § 7431(g)–"[a] decrease in pay of a physician or dentist resulting from an adjustment of market pay . . . shall not be treated as an adverse action"--any reduction in Plaintiff's market pay cannot be treated as an adverse action. Accordingly, the Magistrate Judge concluded that Plaintiff cannot establish a prima facie ADEA disparate impact claim. As an alternative, the Magistrate Judge found that Plaintiff had failed to provide sufficient statistical evidence to demonstrate the method of determinating compensation resulted in a disparate impact on him and the other members of the anesthesiologist group. The Magistrate Judge noted that Plaintiff had submitted no information regarding other anesthesiologists or physicians within the Dorn Medical Facility or throughout the VA hospital system.

The Magistrate Judge also found that, if Defendant is entitled to assert a RFOA defense, Defendant has met its burden by identifying such factors as "the Secretary's need to attract and retain highly qualified physicians as stated in the remarks to the Senate as is incorporated into the statute

and the Dorn VA's desire to comply with the Veterans Administration's established pay practices."[3]

With regard to Plaintiff's second cause of action under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Magistrate Judge determined that the United States has not waived sovereign immunity so that Plaintiff cannot pursue a separate cause of action seeking a declaratory judgment.

B.     Plaintiff's Objections

Plaintiff contends that the Magistrate Judge erred in concluding that the court should review only the total annual pay received rather than analyzing the various components, and specifically market pay. The court agrees.

As noted in the chart hereinabove, Plaintiff's market pay has decreased over time as Defendant has attempted to ensure all anesthesiologists at the Dorn Medical Facility receive comparable salaries. Reviewing the appropriate criteria set forth in § 7431(c)(4) compels the conclusion that Plaintiff's experience serving Dorn Medical Facility has rendered him less valuable over time. No facts in the record support such a conclusion, and such a finding would seem incongruent with the purposes underling the Pay Act.

Plaintiff further contends the Magistrate Judge erred in finding that any reduction in market pay cannot, by statute, be construed as an adverse employment action. The court agrees.

In the court's view, § 7431(c)(6) more narrowly prohibits claims of adverse action only when the reduction in pay results from a change in board certification or reduction of privileges. Stated differently, Plaintiff's reduced market pay over time appears to be contrary to Section 7431(c)(6),

---

[3] The Magistrate Judge also thoroughly discussed Defendant's argument that sovereign immunity bars Plaintiff bringing a disparate-impact claim under § 633a. In the court's view, the Magistrate Judge correctly determined that the United States has waived sovereign immunity with respect to public-sector ADEA claims. Defendant does not object to the Magistrate Judge's findings and conclusions as to this matter, and they are adopted and incorporated herein.

inasmuch as there is no evidence to suggest he has experienced a change in board certification or reduction of privileges.

Next, Plaintiff contends that the Magistrate Judge erred in finding that Plaintiff had not put forth adequate statistical evidence to raise an inference of causation. Although the statistical evidence urged by Plaintiff is nominal, the court finds the evidence is adequate to create a genuine issue of material fact for the jury. The court concludes, for purposes of summary judgment, that Plaintiff has made out a prima facie case of ADEA disparate-impact discrimination under § 633a.

Plaintiff objects to the Magistrate Judge's analysis of the RFOA defense. Among other things, Plaintiff asserts that Defendant's proffered reasons are unreasonable and, in fact, evince a violation of the statutory mandate to consider the factors in § 7431(c)(4). Given the open question regarding the application of RFOA defense in public-sector ADEA cases, the court cannot find, as a matter of law, that summary judgment is appropriate with respect to Defendant's contention that it satisfies the affirmative defense. Because the court finds genuine issues of material fact exist and concludes summary judgment is inappropriate regarding the merits of Plaintiff's claims, the parties should be prepared to provide additional briefing to allow the court, at the proper juncture, to make a determination regarding this issue.

Finally, Plaintiff objects to the Magistrate Judge's finding that the United States has not waived jurisdiction under the Declaratory Judgment Act. The court disagrees. As the Magistrate Judge properly observed, the Declaratory Judgment Act does not operate as an express waiver of sovereign immunity "because it neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief." Worsham v. United States Dep't of the Treasury, Civil Action No. ELH-12-2635, 2013 WL 5274358, *7 (D. Md. Sept. 17,

2013) (quoting Muirhead v. Mechmam, 427 F.3d 14, 17 n.1 (1st Cir. 2005)); and citing Stogsdill v. Sebelius, C/A No. 3:12-0007-TMC, 2013 WL 521483, *3 (D.S.C. Feb. 11, 2013) (citing Ballstrieri v. United States, 303 F.2d 617, 619 (7th Cir. 1962) (holding that Declaratory Judgment Act is not the United States' consent to suit)). Plaintiff's objection is without merit.

## CONCLUSION

For the reasons stated, Defendant's motion for summary judgment (ECF No. 38) is **granted in part and denied in part.** Defendant's motion is granted as to Plaintiff's claim for relief under the Declaratory Judgment Act (Second Cause of Action). Defendant's motion is denied as to Plaintiff's ADEA claim (First Cause of Action), and specifically Plaintiff's disparate impact claim. Because Plaintiff seeks to amend his complaint, contending that he does not abandon his disparate treatment claim, Defendant's motion for summary judgment as to this issue is denied, without prejudice.

Plaintiff's motion for partial summary judgment (ECF No. 41) is **denied.** The matter is recommitted to the Magistrate Judge for additional pretrial handling, including disposition of Plaintiff's motion for leave to file amended and supplemental complaint filed March 14, 2017 (ECF No. 79).

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

March 29, 2017